## Case No. 13,722.

### TABER et al. v. UNITED STATES.

[1 Story, 1;[1] 2 Law Rep. 298; Brunner, Col. Cas. 523.]

Circuit Court, D. Massachusetts. Jan. 23, 1839.

SHIPPING — PUBLIC REGULATIONS — FOREIGN VOYAGE—WHALE FISHING—BOND TO COLLECTOR.

1. The terminus of a voyage determines its character; if it be within the limits of foreign jurisdiction it is a foreign voyage, and not otherwise.

2. A whaling voyage is not a foreign voyage within the meaning of the act of 1803, c. 62 [2 Story's Laws, 883; 2 Stat. 203, c. 9], and a bond executed under, but not required by nor in accordance with that act is a nullity.

[Cited in U. S. v. Kimball, Case No. 15,531; U. S. v. Reindeer, Id. 16,145; Harrison v. Vose, 9 How. (50 U. S.) 379. The Antelope, Case No. 484; Frates v. Howland, Id. 5,066; The Ocean Spray, Id. 10,412; Burdett v. Williams, 27 Fed. 117.]

[Cited in Charter Oak Life Ins. Co. v. Hosmer, 1 D. C. 302; Simpson v. Story, 145 Mass. 499, 14 N. E. 641.]

Writ of error to a judgment of the district court of Massachusetts upon a bond given to the collector of New Bedford. The original case came before the district court upon a statement of facts agreed by the parties; and the district judge decided, that the bond was valid, and the United States entitled to judgment. [Case unreported.] The statement of facts was as follows:

This is an action of debt upon a bond given by the defendants [Frederic C. Taber and others] to the collector of the customs for the district of New Bedford, which is in the case, and may be referred to. The defendants are the master and agent of the ship Isabella of Fairhaven, a vessel engaged in the whale fishery. At the time of the execution of the bond referred to, the ship Isabella was fitted for a whaling voyage, and the master, upon the requisition of the collector, in order to obtain his clearance for said voyage, made out and presented to the collector the descriptive list of his crew, a certified copy of which is in the case, and may be referred to. The collector thereupon, knowing that said ship was about to proceed upon a voyage in the whale fishery, took the bond, upon which this action is founded. The ship was a registered vessel, and had always been employed in the whale fishery. The said ship being furnished with the papers aforesaid as a registered vessel, proceeded upon her said voyage on the 2d day of November, A. D. 1834, and returned to New Bedford on the 30th of August, 1838, with a cargo of sperm oil, obtained during said voyage. During her absence she was employed exclusively in the whale fishery, touching at such ports and places only as are usual in the prosecution of the fisheries, for supplies, and during said voyage was not engaged in any foreign trade.

[1] [Reported by William W. Story, Esq.]

If upon this state of facts the court should be of opinion, that the collector was authorized by law to take the bond aforesaid, judgment is to be entered against the defendants for the amount of the penalty. If the court should be of opinion that the defendants were not required by law to execute said bond in order to enable said ship to proceed upon the voyage aforesaid, judgment is to be entered for the defendants.

Either party may except to the decision of the district judge and carry this case to the circuit court upon the foregoing statement of facts.

Colby and Clifford, for Defendants.
John Mills, District Attorney, U. S.

Colby & Clifford, of New Bedford, for plaintiffs in error, argued in substance as follows:

The agreed statement of facts, upon which this case was presented, reduces the whole matter in controversy to the single question,—What is the true judicial construction of the term, "foreign voyage," as it is used in the act of 1803, c. 62 [2 Story's Laws, 883; 2 Stat. 203, c. 9].

I. For the plaintiff in error it is contended, that this term does not include whaling voyages, and that this was not the intention of congress in framing that act is apparent: 1st. From the act itself. Vide sections 2, 3, where it is described as "from a port in the United States to a foreign port," and requiring a register to be taken out. The reference to "wages," in the act, cannot apply to whaling voyages, as the crew are not paid in these voyages at a stipulated sum, but in a lay or share of the proceeds, which cannot be ascertained till the termination of the voyage. In this respect they are like the ordinary fishing voyages provided for in other acts of congress. 2d. From other statutes of the United States, in which the term foreign voyage is used. Thus, in St. 1793, c. 52 [1 Story's Laws, 285; 1 Stat. 305, c. 8], provision is made for the proper papers to be furnished to ships engaged in the fisheries. They are entirely different from those contemplated for ships engaged in the prosecution of "foreign voyages." See, also, section 2 of this act, giving the form of a license for the "whale fishery," and especially section 8, where the term is used in express contradistinction to voyages in the whale fishery. That congress considered them as totally distinct, and amenable to very different regulations, is apparent from the whole course of legislation upon this subject. Vide Acts 1817, c. 204, § 5 [3 Story's Laws, 1623; 3 Stat. 351, c. 31]; Acts 1813, c. 184, § 3 [2 Story's Laws, 1303; 2 Stat. 809, c. 42]. 3d. If there is no diversity in the meaning attached to this term by congress, in the various statutes, it is no longer an open question. The collector had no right to demand the bond. Vide The Three Brothers [Case No.

14,009]; The Eliza [Id. 4,346]; Curt. Adm. Dig. 470, and cases there cited.

II. It was the duty of the collector to furnish this ship when she sailed on her "whaling voyage," with an enrolment and license, and other papers conformable, under the act of 1793, c. 52 [1 Story's Laws, 285; 1 Stat. 305, c. 8]. If he had thus performed his duty this bond would not have been required or given. See Case of Mutineers of Brig Troy,—U. S. v. Rogers [Case No. 16,189].

III. If it was not demandable by the collector as a statutory bond, the plaintiffs in error were not, in the words of the agreed statement, "required by law to execute it." It cannot be contended successfully, that they gave it voluntarily, and that it may be enforced as a bond valid at common law. For: 1st. They did not give it voluntarily in the sense in which this view of it is urged. The case finds, that it was exacted by the collector before they could obtain a clearance. 2d. To be good as a common law bond it must have resulted in some advantage to the obligors, or have been induced by, or contained some provisions for, their benefit. 3d. The only question, upon which the case contemplates their liability upon it, is, were they "required by law to execute it." In Dixon v. U. S. [Id. 3,934], Mr. Chief Justice Marshall said: "The collector is a ministerial officer, whose business is to pursue the statute, and if he fails to do so the statute will not sanction his act." "The record, as it appears in this court, exhibits a bond not demandable under the statute, and a suit on such bond cannot be sustained." Upon the strict construction to be given to the statute, see Curt. Adm. Dig. 465, and cases there cited.

Dist. Atty. Mills, for the United States, argued è contra.

STORY, Circuit Justice. The act of 1803, c. 62 [2 Story's Laws, 883; 2 Stat. 203, c. 9], supplementary to an act concerning consuls and vice consuls, &c. provides in the first section: "That before a clearance be granted to any vessel, bound on a foreign voyage, the master thereof sha'l deliver to the collector of the customs a list, containing the names, places of birth, and residence, and a description of the persons, who compose his ship's company, to which list the oath or affirmation of the captain shall be annexed, &c. &c. and the said collector shall deliver him a certified copy thereof, &c. &c. &c.; and the master shall moreover enter into bond, with sufficient security, in the sum of four hundred dollars, that he shall exhibit the aforesaid certified copy to the first boarding officer, at the first port in the United States, at which he shall arrive on his return thereto, and then and there produce the persons named therein to the said boarding officer, &c. &c."; with other specific provisions and

exceptions, which it is unnecessary to recite. In the present case the requisitions of the act have not been complied with; and it is insisted on behalf of the United States, that the bond is forfeited thereby. On the other hand, it is insisted on behalf of the plaintiffs in error (the original defendants), that the bond itself is a mere nullity, and not by law required to be given by ships engaged in whaling voyages. And the main question, therefore, is whether a ship engaged exclusively in a whaling voyage, is within the descriptive words and sense of the act of 1803, "a vessel bound on a foreign voyage." If she is not, then I am of opinion, that no action can be maintained on the present bond, as it seeks to enforce a supposed statute duty, and is in the nature of a penalty, and has been exacted by the officers of the government, under a mistake, as well of their duty, as of law, and that the judgment ought to be reversed.

It is clear, that it has been for a long period the practice of the custom house officers to take lists of the crew, and bonds from the masters of whaling ships, under the supposed authority of the act of 1803, c. 62 [2 Story's Laws, 883; 2 Stat. 203, c. 9]. And certainly this practice is entitled to some weight in ascertaining the true interpretation of the act; although it cannot control the true interpretation of it, if the practice does not conform to it. And it is not decisive in a case of this nature, that the mischiefs to be guarded against and remedied by the act of 1803, are equally as applicable to whaling voyages, as to voyages to foreign ports for the general purposes of trade. Where a penalty, or a provision in the nature of a penalty, is to be enforced, the general rule is, that the statute is to be construed strictly; and the language is not to be enlarged to cover a case standing upon similar grounds, if the ordinary interpretation of the terms would not reach it. Now, the ordinary meaning, which we annex in commercial transactions to the words, "a vessel bound on a foreign voyage," is, that it refers to a voyage to some port or place within the territory and jurisdiction of some foreign sovereign. We do not restrict the meaning of the words to voyages carried on beyond the actual territorial limits of the United States, in contradistinction to voyages on our inland waters, or to mere coasting navigation in our sounds and rivers. We should not call a voyage from Boston to New Orleans a foreign voyage, although a great portion of the voyage is out of the limits of the United States. In such a case the terminus of the voyage settles the description. On the other hand, we should call a voyage from Boston to any one of the West India Islands, as for example, to Cuba, a foreign voyage, for the very reason, that one of the termini of the voyage for the purposes of the enterprise is within a foreign territory. So, we never speak of a voyage in the bank and other cod fisheries as a foreign voyage, although in such a voyage the vessel sometimes may touch at a foreign port. Why? Because the ocean is deemed the common highway of all nations, and foreign to none. It is in no just sense within any foreign jurisdiction. And here, again, we are governed in the appellation by the descriptive termini of the fishing voyage, the port from which the vessel proceeds, and to which she is to return. I know no difference in this particular in common usage between fishing voyages and whaling voyages. Whaling voyages are emphatically voyages on the ocean. In short, as a generic expression, "a foreign voyage" means, in the language of trade and commerce, a voyage to some port or place within the territory of a foreign nation. This is emphatically true throughout the provisions of the duties' collection act of 1799, c. 128 [1 Story's Laws, 573; 1 Stat. 627, c. 22], which still constitutes the leading statute to regulate our intercourse with foreign nations for commercial purposes. The words there used in regard to foreign importations, are "goods brought from a foreign port or place," or a vessel arriving "from a foreign port or place." Similar descriptive phraseology will be found in the act for the government and regulation of seamen in the merchant service (Act 1790, c. 56 [1 Story's Laws, 102; 1 Stat. 131, c. 29]), where shipping articles are required on voyages of a ship or vessel "bound from a port of the United States to any foreign port." On the other hand, in the act of 1813, c. 2 [2 Story's Laws, 1315; 3 Stat. 2], regulating shipping articles in the bank and other cod fisheries, the words are, "any vessel bound from a port of the United States to be employed in such fisheries." The navigation act of 1817, c. 204 [3 Story's Laws, 1623; 3 Stat. 351, c. 31], insists throughout upon similar distinctions.

Passing from these general considerations, let us see whether any fixed interpretation of a different sort is to be found in the laws of the United States. If there be not, then, I take it to be clear, upon the established rules of interpretation of statutes respecting commerce, that the common commercial sense of the words is to be adopted, unless there be a distinct controlling sense put upon the words by the legislature. The supreme court of the United States have uniformly acted upon this doctrine. I recollect but two instances, in which the phrase, "foreign voyage," occurs in the laws of the United States; and two only have been pointed out at the argument; and, after such thorough researches by counsel, I presume none other exists. One is in the statute of 1803, c. 62 [2 Story's Laws, 883; 2 Stat. 203, c. 9], now under consideration. The other is in the act of 1793, c. 52 [1 Story's Laws, 285; 1 Stat. 305, c. 8], for enrolling and licensing ships or vessels to be employed in the coasting trade and fisheries. This last act is the

only one specially directed to the whale fisheries, as well as to the cod fisheries. In the eighth section it declares, "that if any ship or vessel enrolled or licensed as aforesaid shall proceed on a foreign voyage without first giving up her enrolment and license," &c., she shall be liable to seizure and forfeiture. Now, here, the words are distinct and appropriate, and applied to the very subject matter of the whale fisheries. "Foreign voyage" is used in contradistinction to fishing voyage and whaling voyage, expressing the clear sense of the legislature, that a fishing voyage or a whaling voyage is not "a foreign voyage." Nearly thirty years ago this very question under that act came before the court in the case of The Three Brothers [Case No. 14,009], and it was then decided, that a fishing vessel, which, according to the course and usage of the fishing employment, went to a foreign port, if it was not for the purpose of trade there, was protected from seizure and forfeiture. In short, she was not engaged in a foreign voyage in the sense of the act.

Here, then, we have a clear expression of the legislature on the very point of the interpretation of the words, "foreign voyage." Upon what ground can this court, then, declare, that a whaling voyage is a foreign voyage, when congress have used the words in contradistinction thereto, in an act pointed to the very subject of the whale fisheries? The act proceeds in another section (section 21) to provide for a permit to whaling ships "to touch and trade at any foreign port or place," thus making a distinction between whaling voyages and trading at foreign ports. The act of 1803, c. 62 [2 Story's Laws, 883; 2 Stat. 203, c. 9], contains no words expressive of a different or more qualified sense. The words of the act are perfectly satisfied by understanding them in the common commercial sense, to mean a voyage to a port or place within the territory of a foreign nation. What is more important is, that the remaining sections of the act are mainly pointed to acts to be done, and to transactions which are to take place, in foreign ports, where we have regular stationed consuls and commercial agents. It would be impracticable, without a violation of all the common rules of interpretation, to apply the regulations of the second and third sections of the act to any whaling voyage, or to any voyage except one strictly for the purposes of general trade to a foreign port. Under such circumstances, the general maxim ought to be applied, "noscitur à sociis." We are to interpret the whole act, as having relation to the same common objects, and to be expressive of the same general relations of vessels in the merchant's service in foreign trade. The act of 1813, c. 184 [2 Story's Laws, 1303; 2 Stat. 809, c. 42], for the regulation of seamen on board of public and private vessels of the United States, seems conclusively to recognise and establish this very construction of the first section of the act of 1803, c. 62 [2 Story's Laws, 883; 2 Stat. 203, c. 9]. It declares (section 2), "that in all cases of private vessels of the United States sailing from a port of the United States to a foreign port, the list of the crew, made as heretofore directed by law, shall be examined by the collector for the district, from which the vessel shall clear out, and, if approved by him, shall be certified accordingly." The very object of this provision, and of the accompanying provisions of the act, was to afford protection to American citizens, whose names were borne on the list. This object certainly is equally applicable to whaling voyages and to voyages to foreign ports. And yet the legislature speaks only as to the latter; and thereby plainly shows, that the act of 1803 had reference solely to merchant vessels engaged in trade and bound to foreign ports for the purpose of foreign commerce.

Upon the whole, my judgment is, that a whaling voyage is not, in the common commercial sense of the words, deemed a foreign voyage, any more than a voyage in the cod or other common fisheries; that the words "foreign voyage" are in the common commercial sense applied to voyages to foreign countries, where the main terminus is a foreign port, for the purpose of exportation or importation in the course of trade; and that a voyage, which is to be essentially performed upon the ocean, from its nature and objects, is not deemed foreign to the country. I am also of opinion, that this is the sense, in which the language has been constantly understood by congress in all our public acts; and especially, that this is the natural and just sense of the language in the act of 1803, taking into consideration all the purposes and provisions within the scope of that act. If the question were entirely new, I should have no doubt on the point. But I think, that congress, in the act of 1793, c. 52 [1 Story's Laws, 285; 1 Stat. 305, c. 8], for enrolling and licensing vessels for the whale fisheries, have directly established this very construction; and that no court of justice is at liberty to depart from it.

My judgment, therefore, is, that the judgment of the district court ought to be reversed.

———

TABER, The MARY E. See Case No. 9,209.

TABER, The WILLIAM. See Case No. 17,757.