**SPELAR v. UNITED STATES.**
Civil Action No. 8019.

District Court, E. D. New York.
Feb. 11, 1948.

J. Vincent Keogh, U. S. Atty., of New York City (Frank J. Parker, Chief Asst. U. S. Atty., of Brooklyn, of counsel), for defendant, for the motion.

Gerald F. Finley, of New York City, for plaintiff.

KENNEDY, District Judge.

This suit for wrongful death is based upon the Federal Tort Claims Act, 28 U.S. C.A. § 921 et seq. Plaintiff is the widow of a deceased employee of American Overseas Airline, Inc. She alleges in her complaint that she is a resident of the Eastern District of New York and that on January 20, 1947, she became administratrix of her husband's estate under letters issued by the Surrogate's Court of Queens County. The plane, on board of which decedent was killed, had just taken off from Harmon Field in or near Stephenville, Newfoundland, on October 3, 1946, the date of the fatal accident. And this accident is said to have been due to the negligence of the defendant. It is also alleged in the complaint that, under the laws of Newfoundland (Consolidated Statutes of Newfoundland, 3rd Series, Ch. 213), an action for wrongful death is created. Upon this statute plaintiff relies. She says that under the Federal Tort Claims Act she has a right to invoke this statutory law of the place where the accident occurred, even though it is not within the territorial limits of the United States, because at the time of the decedent's death, the government was operating the air base at or near which the plane fell, and because the Federal Tort Claims Act provides that her rights are to be determined by the lex loci delicti.

Whether or not the Federal Tort Claims Act applies to this situation depends largely upon whether Harmon Field does or does not answer the description "foreign country," because, while the Federal Tort Claims Act constitutes a waiver of sovereign immunity under certain circumstances, the statute itself specifically bars a recovery on any "claim arising in a foreign country." 28 U.S.C.A. § 943(k). The government, urging that all of Newfoundland is obviously a foreign country, moves to dismiss the complaint. The plaintiff opposes the motion on the ground that the locale of the accident, even though in Newfoundland, is not a "foreign country" since it is one of the areas covered by a 99-year lease and executive agreement entered into between the British Government and the United States of America on March 27, 1941, 55 Stat. Pt. 2, 1560–1594.

The agreement and lease of March 27, 1941, to which plaintiff refers, was recently carefully considered and analyzed by Judge Clark in this circuit. Connell v. Vermilya-Brown Company, Inc., 2 Cir., 1947, 164 F.2d 924. The Connell case involved a

claim under the Fair Labor Standards Act, 29 U.S.C.A. § 201, by persons who had done construction work at Fort Bell and Kindley Field, Bermuda. That area was embraced within the scope of the same lease and executive agreement which relates to Harmon Field in Newfoundland. The Connell complaint was dismissed in the District Court on the ground that, despite the lease and executive agreement, the leased areas of Bermuda did not constitute a "Territory or possession of the United States" within the meaning of the Fair Labor Standards Act. Judgment of dismissal was reversed in the Circuit Court because the lease and executive agreement were construed to embrace such a far-reaching surrender of sovereignty by Great Britain, and acceptance of control by the United States, as to constitute Bermuda a "possession" within the meaning of the act then under consideration.

Clearly, therefore, Harmon Field, the locale of the accident which gave rise to the claim at bar, is, under the Connell case, a "territory or possession of the United States," within the meaning of the Fair Labor Standards Act. Is it also a part of a "foreign country" and exempt from the operation of the Federal Tort Claims Act? The solution of the problem is not much advanced by recourse to semantics. For, as the Supreme Court has recognized, the word "country" in the expression "foreign country" is ambiguous (Burnet v. Chicago Portrait Co., 1932, 285 U.S. 1, 52 S.Ct. 275, 76 L.Ed. 587), and now, by virtue of the acquisition of bases in Bermuda, Newfoundland, and elsewhere, the word "foreign" has itself become for some purposes difficult to define, so that the whole expression "foreign country" has lost much of what clarity of meaning it once had. It has been reduced almost to the level of those chamoleon-like symbols which, in some statutes, take color only from their background.

Nor is it easy to define the meaning of the statute for purposes of this motion by attempting to discover and carry out the beneficent purposes which led to the enactment of the law. It is perfectly conceivable that the same Congress which would be willing to make applicable to Newfoundland the spreading of employment (the Federal Labor Standards Act) would be quite unwilling to waive sovereign immunity against all tort claims arising in the same area.

I have said that, under the Connell case, Harmon Field in Newfoundland is a "territory or possession of the United States," certainly where fair labor standards are concerned. But, in the Federal Tort Claims Act, the expression "Territories and possessions of the United States" is used only once, 28 U.S.C.A. § 931, and there in a context which rules out Harmon Field, because that section of the statute confers jurisdiction upon United States district courts "including the United States district courts for the Territories and possessions of the United States." The leased area in Newfoundland has no such courts. Apart from this, there is nothing that I can find in the Federal Tort Claims Act which gives any clear and specific clue concerning the geographical area to which Congress intended the legislation to be applicable, except, as already mentioned, the exemptions found in one section, 28 U.S.C.A. § 943, among which is that of any claim arising in a "foreign country."

 It seems to me that I have no recourse except to apply the familiar principle that a Congressional waiver of sovereign immunity is to be narrowly construed. And under any narrow construction of the statute, the expression "foreign country" certainly applies to Newfoundland, and even to areas within it over which the United States exercises many, but not all, of the powers of a sovereign.

The result may seem anomalous, I admit. If plaintiff's intestate had been merely underpaid at Harmon Field, he would have had a remedy because it is a "territory" or "possession." Yet, for his death there, even though negligence be established, his widow is, under my construction of the tort statute, without remedy because it is a "foreign country." Plaintiff's claim would have been good if her husband had been killed during a landing in the United States; it is bad merely because he was killed during the takeoff in Newfoundland.

969

But it may well be that the anomaly is more apparent than real: that rather than subject the United States to claims justiciable under foreign law, the Congress felt that such suitors should have a remedy only as a matter of grace, subject to such conditions as the Congress might impose, and not as a matter of right, and that this explains its specific refusal to apply a general statute to a claim arising in a "foreign country."

The complaint is dismissed for want of jurisdiction.