## SPELAR v. UNITED STATES.
### No. 33, Docket 21041.

United States Court of Appeals
Second Circuit.
Dec. 8, 1948.

Arnold B. Elkind, of New York City (Gerald F. Finley, of New York City, on the brief), for plaintiff-appellant.

Frank J. Parker, Chief Asst. U. S. Atty., of Brooklyn, N. Y. (J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y., on the brief), for defendant-appellee.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Does the exclusion from the coverage of the Federal Tort Claims Act of any "claim arising in a foreign country," 28 U. S.C.A. § 943(k), Revised Title 28 U.S.C.A. § 2680(k), prevent recovery from the United States of America for wrongful death occurring on a Government airfield in Newfoundland in an area covered by a 99-year lease and executive agreement as a part of the famous "destroyer deal" between Great Britain and the United States of March 27, 1941? In dismissing this action the district court has held that it does. D.C.E.D.N.Y., 75 F.Supp. 967. We are constrained to disagree.

Plaintiff is administratrix of her husband's estate under letters issued by the Surrogate's Court of Queens County, New York. Her husband was a flight engineer, an employee of American Overseas Airlines, Inc., who was killed by the crashing of his plane just as it had taken off from Harmon Field, in or near Stephenville, Newfoundland, on October 3, 1946. Compare Spelar v. American Overseas Airlines, Inc., D.C.S.D.N.Y., 80 F.Supp. 344. Plaintiff's complaint alleges that his death was due to the negligence of representatives of the United States and that under the laws of Newfoundland, Consol.Stat. of Newfoundland, 3d Ser., c. 213, an action for wrongful death is created, upon which the plaintiff relies as establishing her claim under the Federal Tort Claims Act. The complaint was dismissed below on the defendant's motion for lack of jurisdiction.

The Act as passed in 1946 gave exclusive jurisdiction to the United States district court for the district wherein the plaintiff was resident or wherein the act or omission complained of occurred, "including the United States district courts for the Territories and possessions of the United States," on claims against the United States for death by the negligent or wrongful act or omission of any Government employee while acting within the scope of his employment, "under circumstances where the United States, if a private person, would be liable to the claimant for such * * * death in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 931(a). This is continued in the revision, Title 28 U.S.C.A. § 1346(b), except that here the district courts are spelled out to designate those of Alaska, the Canal Zone, and the Virgin Islands. Since obviously the revision was not intended to limit the coverage, the reference to the original form is of importance, as indicating a congressional recognition of claims in the "possessions" of the United States.

■ The nature of the 99-year lease and executive agreement entered into between Great Britain and the United States, as set forth in 55 Stat.Pt. 2, 1560–1594, is discussed at some length in Connell v. Vermilya-Brown Co., 2 Cir., 164 F.2d 924, where we held that the Bermuda base transferred pursuant to this same agreement was a "possession" of the United States within the applicability of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. Since the argument of this appeal, the Supreme Court has affirmed that case. Vermilya-Brown Co. v. Connell, 69 S.Ct. 140. Although different statutes are involved, it would seem clear that that decision is certainly persuasive, if not well-nigh conclusive, authority for reversal here. It is difficult to believe that an air base which is a possession under one Act is a foreign country, no less, under another. Moreover, in the passage quoted above, Congress appears to have recognized the applicability of the Act to possessions of the United States. While defendant here did not cite or discuss the Connell case, the district judge below attempted to distinguish it, substantially on the ground that the present statute was not crystal clear and that a congressional waiver of sovereign immunity was to be narrowly construed. This doctrine of "niggardly" construction has been cited to this Act, State of Maryland, to Use of Burkhardt, v. United States, D. C. Md., 70 F.Supp. 982, though we have had occasion to criticize such application. Aetna Cas. & Surety Co. v. United States, 2 Cir., 170 F.2d 469. When after many years of discussion and debate Congress has at length established a general policy of governmental generosity toward tort claimants, it would seem that that policy should not be set aside or hampered by a niggardly construction based on formal rules made obsolete by the very purpose of the Act itself. Particularly should this be true as to the broad terms of coverage employed in the basic grant of liability itself.[1]

---

[1] Congress has indicated this policy by its amendment in 1947 to destroy the basis of defenses made by the Department of Justice in actions based on statutes in two states locally defined as only punitive and not remedial in nature; the amendment extends recovery to cover these cases. See 28 U.S.C.A. § 931 (a) as amended Aug. 1, 1947, c. 446, § 1, 61 Stat. 722, and H.R.Rep.No.748, 80th Cong., 1st Sess., U.S.Code Cong.Serv. 1947, p. 1548.

■ In our view, however, the statutory exception referring to "a foreign country" is sufficiently precise and explicit that, even without the Connell precedent, this claim must be held included in the coverage of the Act. The language of the grant to the United States of the area is explicitly that of a definite lease of territory for a particular period. As pointed out in the Connell case, there was also incorporated an extensive grant of judicial jurisdiction and of general powers to carry out the purpose of the cession, namely, the establishment of the air bases. There has been much discussion of the somewhat mystic problem as to how far "sovereignty" has been granted; however that may be decided, it would seem that where the United States constructs, operates, and controls an air base so completely as is the actual fact, so obviously in direct line with the intent of the contracting governments, it is on the whole fantastic to consider this territory a foreign country within the meaning of a local statute affecting the relation of this government and private persons.[2] Moreover, in the light of the statutory purpose here the result seems the same. The only ground suggested for this particular exception is that defense of such claims, including the locating, preserving, and use of evidence, would involve too great a practical problem to make waiver of immunity as to them either fair or feasible. But if this be the reason for the exception—and it seems to us a reasonable explanation—it surely does not exist in the case of a government-owned-and-controlled air base. Actually with respect to this very accident, there seem to have been the most complete reports and investigations, as would be usual by the Government agencies in such a situation.

■ The United States Attorney ably and vigorously urges not only the objections we have already noticed, but others, which nevertheless do not persuade us. There seems no difficulty in the reference of the statute back to the local law of the area, here the Newfoundland law which the plaintiff has alleged and plans to prove. Such reliance on foreign law as the source of rights locally enforced is of course not at all unusual in our courts. Nor does it seem of importance that actually the United States has not established any district courts at this air base. We are now particularly concerned with the existence of the right, which must be established before we need turn to the form of remedy. But the remedy here is fully adequate and complete in the alternative provision of the statute as quoted above, allowing venue at the plaintiff's residence as here. Nor do we see any possibility of political complications. The executive agreement is too carefully drawn, it too well adjusts the various rights of the two countries involved, to make it seem possible that any difficulty can arise if the United States pays private claims made against it for negligence at these air bases. Finally, however one may regard the much discussed issue of the relative scope of the executive agreement as against the treaty, it cannot be escaped here that the cession of the area has actually been made and the fact of grant and occupancy is not challenged by anyone. It would certainly be too refined a thesis to deny this plaintiff recovery on the ground that, though the high contracting parties were quite satisfied, the grant was inoperative because it was made pursuant to executive agreement, and not treaty. Were this thesis to be adopted, then indeed this private litigation might have political, if not international, complications vastly embarrassing, one fancies, to this very defendant here.

Reversed and remanded.

---

[2] Compare De Lima v. Bidwell, 182 U.S. 1, 180, 21 S.Ct. 743, 746, 45 L.Ed. 1041: "A foreign country was defined by Mr. Chief Justice Marshall and Mr. Justice Story to be one exclusively within the sovereignty of a foreign nation, and without the sovereignty of the United States. The Eliza [C.C.], 2 Gall. 4, Fed.Cas.No. 4,346; Taber v. United States [C.C.], 1 Story 1, Fed.Cas.No.13,722; The Adventure [C.C.], 1 Brock. 235, 241, Fed.Cas. No.93."