# UNITED STATES *v.* SPELAR, ADMINISTRATRIX.

No. 42.  Argued October 18, 1949.—Decided November 7, 1949.

*Samuel D. Slade* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison, Robert L. Stern* and *Cecelia H. Goetz.*

*Arnold B. Elkind* argued the cause for respondent. With him on the brief was *Gerald F. Finley.*

MR. JUSTICE REED delivered the opinion of the Court.

The Federal Tort Claims Act is inapplicable by its terms to "any claim arising in a foreign country." [1]  The Court of Appeals for the Second Circuit has held that this provision does not bar suit against the Government for an allegedly wrongful death occurring at a Newfoundland air base under long-term lease to the United States. [2]  We are here asked to review that decision.

Flight engineer Mark Spelar, an employee of American Overseas Airlines, was killed on October 3, 1946, in a take-off crash at Harmon Field, Newfoundland.  This air base is one of the areas leased for ninety-nine years by Great Britain to the United States pursuant to the same executive agreement and leases discussed at length in *Vermilya-Brown Co.* v. *Connell,* 335 U. S. 377.  Spelar's administratrix, respondent here, initiated this action against the United States under the Federal Tort Claims Act in the District Court of the United States for the Eastern District of New York, the district where she resides.  She alleges that the fatal accident was caused by the Government's negligent operation of Harmon Field.  The local law which underlies her cause of action is Newfoundland's wrongful death statute authorizing the executor or administrator to bring suit for death arising from negligence. [3]  Upon the Government's motion, the District Court held the claim to be one "arising in a foreign

---

[1] 62 Stat. 984, 28 U. S. C. (Supp. II) § 2680 (k).  The language was identical at the time this suit was instituted though at that time contained in 60 Stat. 846, 28 U. S. C. § 943 (k).

[2] *Spelar* v. *United States,* 171 F. 2d 208.

[3] Cons. Stats. of Newfoundland (3d Series), c. 213.  Local law must be pleaded since the Federal Tort Claims Act permits suit only "where the United States, if a private person, would be liable . . . in accordance with the law of the place where the act or omission occurred."  60 Stat. 843, 28 U. S. C. § 931 (a).  The substance of this provision is now embodied in 62 Stat. 933, 28 U. S. C. (Supp. II) § 1346 (b).

country," and dismissed the complaint for want of jurisdiction. The Court of Appeals reversed. Our decision in *Vermilya-Brown* that the Fair Labor Standards Act applies to such leased military bases was deemed "persuasive, if not well-nigh conclusive" of the issue here.[4] Because of this broad interpretation put upon our opinion in *Vermilya-Brown,* and because the decision substantially affects the area of private suit against the Government, we granted certiorari, 336 U. S. 950.

We are of the opinion that the court below has erred. Sufficient basis for our conclusion lies in the express words of the statute. We know of no more accurate phrase in common English usage than "foreign country" to denote territory subject to the sovereignty of another nation.[5] By the exclusion of claims "arising in a foreign country," the coverage of the Federal Tort Claims Act was geared to the sovereignty of the United States. We repeat what was said in *Vermilya-Brown* at page 380: "The arrangements under which the leased bases were acquired from Great Britain did not and were not intended to transfer sovereignty over the leased areas from Great Britain to the United States." Harmon Field, where this claim "arose," remained subject to the sovereignty of Great Britain and lay within a "foreign country." The claim must be barred.

If the words of the statute were not enough, however, to sustain our result, we think the legislative history behind this provision concludes all doubt. The Federal Tort Claims Act of 1946 was the product of some twenty-eight years of congressional drafting and redrafting,

---

[4] *Spelar* v. *United States,* 171 F. 2d 208, 209.

[5] See Mr. Justice Brown for the Court in *De Lima* v. *Bidwell,* 182 U. S. 1, 180: "A foreign country was defined by Mr. Chief Justice Marshall and Mr. Justice Story to be one exclusively within the sovereignty of a foreign nation, and without the sovereignty of the United States. *The Boat Eliza,* 2 Gall. 4; *Taber* v. *United States,* 1 Story, 1; *The Ship Adventure,* 1 Brock. 235, 241."

amendment and counter-amendment.[6] The draft being considered in 1942 by the House Committee on the Judiciary exempted all claims "arising in a foreign country in behalf of an alien."[7] At the suggestion of the Attorney General, the last five words were excised in a revised version of the bill,[8] so that the exemption provision assumed the form which was ultimately enacted into law.[9] The superseded draft had made the waiver of the Government's traditional immunity turn upon the fortuitous circumstance of the injured party's citizenship. The

---

[6] Agitation for reform of the cumbersome private bill procedure bore its first fruit in H. R. 14737 introduced in the third Session of the Sixty-fifth Congress in 1919. The subject was almost continuously before one House or the other until the final passage of the substance of the present Act by the Seventy-ninth Congress. In the revision of the Judicial Code, Act of June 25, 1948, 62 Stat. 869, minor amendments, not relevant here, were made.

[7] H. R. 5373, 77th Cong., 2d Sess., § 303 (12).

[8] Hearings, H. R. 5373 and H. R. 6463, 77th Cong., 2d Sess., pp. 29, 35, 66. The Attorney General's revised version was H. R. 6463, § 402 (12).

[9] The shape of the Federal Tort Claims Act was largely determined during its consideration in the course of the 77th Congress. Subsequently the bill was reintroduced without substantial modification or further hearings until its enactment during the 79th Congress. The revised version of the tort claims bill introduced during the 2d session of the 77th Congress, S. 2221, was reported favorably by the Senate Committee on the Judiciary (S. Rep. No. 1196, 77th Cong., 2d Sess.), and passed the Senate. 88 Cong. Rec. 3174. The House Committee on the Judiciary, to which it was then referred, and which had been holding hearings on H. R. 6463, the companion measure to S. 2221, the bill passed by the Senate, reported the bill favorably (H. R. Rep. No. 2245, 77th Cong., 2d Sess.), but it was never considered by the House. It was reintroduced in the 78th Congress (H. R. 1356, 78th Cong., 1st Sess.; S. 1114, 78th Cong., 1st Sess.), but no action was taken and again in the 79th Congress (H. R. 181, reported in H. R. Rep. No. 1287, 79th Cong., 1st Sess.). It was finally passed by the 79th Congress as part of the omnibus Legislative Reorganization Act. 60 Stat. 842.

amended version identified the coverage of the Act with the scope of United States sovereignty. The record of the Hearings tells us why. We quote the pertinent colloquy between Assistant Attorney General Francis M. Shea, who explained the Attorney General's revised version of the bill to the House Committee on the Judiciary, and Congressman Robsion of that committee.

> "MR. SHEA. . . . Claims arising in a foreign country have been exempted from this bill, H. R. 6463, whether or not the claimant is an alien. Since liability is to be determined by the law of the situs of the wrongful act or omission it is wise to restrict the bill to claims arising in this country. This seems desirable because the law of the particular State is being applied. Otherwise, it will lead I think to a good deal of difficulty.
>
> "MR. ROBSION. You mean by that any representative of the United States who committed a tort in England or some other country could not be reached under this?
>
> "MR. SHEA. That is right. That would have to come to the Committee on Claims in the Congress." [10]

In brief, though Congress was ready to lay aside a great portion of the sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United States to liabilities depending upon the laws of a foreign power. The legislative will must be respected. The present suit, premised entirely upon Newfoundland's law, may not be asserted against the United States in contravention of that will.

To the extent that *Vermilya-Brown Co.* v. *Connell* has any application to the case at bar, it stands as authority for our result here, for it postulates that the executive agreement and leases effected no transfer of sovereignty

---

[10] Hearings, *supra* note 8, p. 35.

with respect to the military bases concerned.[11]   For the rest, we there held no more than that the word "possessions" does not necessarily imply sovereignty, and concluded as a matter of interpretation of the legislative history of the Fair Labor Standards Act that the leased bases, not in existence at the time the Act was passed, were to be included as "possessions" in the sense in which that word was used in that statute.   The statutory language and the legislative record relating to the ambit of the Federal Tort Claims Act differ entirely from those pertinent to the Fair Labor Standards Act; and since the bases had been leased to the United States prior to the enactment of the statute here involved, the *Vermilya-Brown* problem of determining what Congress would have done when faced with a new situation does not exist at all in the present case.

In *Foley Bros.* v. *Filardo*,[12] we had occasion to refer to the "canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States . . . ."   That presumption, far from being overcome here, is doubly fortified by the language of this statute and the legislative purpose underlying it.

The decision must be

*Reversed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, concurring.

In some aspects, no doubt, every statute presents a unique problem for interpretation.   But the presuppositions of the judicial process in construing legislation

---

[11] *Vermilya-Brown Co.* v. *Connell*, 335 U. S. 377, 380.

[12] 336 U. S. 281, 285.   The case holds the Eight Hour Law inapplicable to Government contractors working on military bases not under lease to the United States.

should be neither capricious nor *ad hoc*. While normally, therefore, it is not very fruitful to express disagreement either with the rendering of a particular statute or the mode by which that is reached, where this involves implications touching the very process of judicial construction silence may carry significance beyond the immediate case.

I agree that the Federal Tort Claims Act does not afford a right of action for the negligent conduct of the Government, through its employees, at one of the bases held by the United States under the long-term arrangements made with Great Britain. But the road traveled by the Court's opinion in reaching this result does not seem to me the way to get there.

The Court's opinion finds the phrase "foreign country," in that Act's restriction against claims "arising in a foreign country," to be as compelling in excluding the Newfoundland air base, under the kind of control that the United States exercises at these bases, as less than a year ago it found the term "possessions" in the Fair Labor Standards Act to be compelling in including these bases. *Vermilya-Brown Co.* v. *Connell,* 335 U. S. 377. To assume that terms like "foreign country" and "possessions" are self-defining, not at all involving a choice of judicial judgment, is mechanical jurisprudence at its best. These terms do not have fixed and inclusive meanings, as is true of mathematical and other scientific terms. Both "possessions" and "foreign country" have penumbral meanings, which is not true, for instance, of the verbal designations for weights and measures. It is this precision of content which differentiates scientific from most political, legislative and legal language.

A "foreign country" in which the United States has no territorial control does not bear the same relation to the United States as a "foreign country" in which the United States does have the territorial control that it has in the air base in Newfoundland. In the entangling relation-

ships between such nations as Great Britain and this country, it is not compelling that "foreign country" means today what it may have meant in the days of Chief Justice Marshall, or even in those of Mr. Justice Brown. The very concept of "sovereignty" is in a state of more or less solution these days. To find a single and undeviating content for "foreign country" necessarily excluding these bases, while "possessions" of the United States is to be deemed as necessarily including them, despite the momentum of historic meaning and experience leading to a contrary significance of "possessions," is to give the appearance of logically compulsive force to decisions. It fails to recognize the scope of supple words that are the raw materials of legislation and adjudication and is unmindful of those considerations of policy which underlie, consciously or unconsciously, seemingly variant decisions. When so many able judges can so misconceive the implications of our decision in *Vermilya-Brown Co.* v. *Connell, supra,* as they have been found to misconceive them, the source of difficulty cannot be wholly with these able lower court judges.

The considerations that led me to join in the dissent in *Vermilya-Brown Co.* v. *Connell, supra,* lead me to concur with the Court's construction of the Tort Claims Act in this case.

MR. JUSTICE JACKSON, concurring.

I reach the same result; but I could hardly do so, as does the Court, by reiteration of the prevailing opinion in *Vermilya-Brown Co.* v. *Connell,* 335 U. S. 377. That decision, taken with the present one, adds up to this: If an employee should chance to work overtime on a leased air base, he can maintain an action for extra wages, penalties and interest, because the Court finds the air base to be a "possession" of the United States. However, if he is injured at the same place, he may not proceed under

the Tort Claims Act to recover, because the Court finds the air base then to be a "foreign country." To those uninitiated in modern methods of statutory construction it may seem a somewhat esoteric doctrine that the same place at the same time may legally be both a possession of the United States and a foreign country. This disparity results from holding that Congress, when it refers to our leased air bases, at one time calls them "possessions" and at another "foreign countries." While congressional incoherence of thought or of speech is not unconstitutional and Congress can use a contrariety of terms to describe the same thing, we should pay Congress the respect of not assuming lightly that it indulges in inconsistencies of speech which make the English language almost meaningless. There is some reason to think the inconsistency lies in the Court's rendering of the statutes rather than in the way Congress has written them. At all events, the present decision seems to me correct, and, so far as it is contradicted by the effect of *Vermilya-Brown,* I think we should retreat from the latter.