## COBB v. UNITED STATES.

### No. 26747–R.

United States District Court
N. D. California, S. D.
June 7, 1950.

Frederick W. Kant and Allan H. Fish, San Francisco, Cal., attorneys for plaintiff.

Frank J. Hennessy, U. S. Atty., and Rudolph J. Scholz, Asst. U. S. Atty., San Francisco, Cal., for the United States.

BLACK, District Judge.

Plaintiff as a resident of California seeks recovery from the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671 to 2679, inclusive, as revised by Public Law 773, 80th Congress, 2nd Session, Chapter 646, for grievous personal injuries sustained in Okinawa on October 23, 1948. He was an employee of a private contractor engaged in military construction for the government on such island and on the evening in question after working hours had been riding for recreation as a passenger in a Jeep which another employee of said contractor had been permitted to use for such occasion. The Jeep was returning about ten or eleven o'clock that night on a military road known as Highway No. 24. Without negligence on the part of the driver of the Jeep and certainly without fault of plaintiff, the Jeep collided with a large crane belonging to the government and negligently left without lights or warning in the traveled part of said road. Plaintiff's injuries were a result of such collision.

Defendant by its answer denied all essential allegations of plaintiff's complaint. Included in its denials were any negligence on defendant's part or that such highway was a thoroughfare. Defendant in its answer admitted the allegation of plaintiff's complaint that "the Island of Okinawa, situated in the Ryukyus Group of Islands, was in the possession of and under the control of the Department of Army of the United States of America" but affirmatively alleged "that Okinawa is a foreign country within the purview of

the Federal Tort Claims Act, and hence this action is barred."

The cause came regularly on for trial and after both parties had rested was submitted on briefs thereafter furnished.

The Federal Tort Claims Act specifically provides that it shall not apply to any claim arising in a foreign country.

It is clear therefore that if Okinawa on October 23, 1948 was a foreign country this court cannot under the law grant plaintiff any relief.

■ Having given serious consideration to all the evidence submitted, to the law applicable and to all decisions touching the question cited by counsel or coming to my attention I can come to no other conclusion than that Okinawa on October 23, 1948 as well as at all times before and since to this date was and is foreign country under the meaning of the Federal Tort Claims Act. Plaintiff's action must therefore be dismissed.

Aside from the status of Okinawa there are many other serious problems involved. Among such are the question of whether or not the crane was left in the highway by reason of any negligent or wrongful act of any employee of the government while acting within the scope of his office or employment. There was no evidence of how such crane was so left or by whom. Defendant argues that such could have been in the use of one of the several contractors on the island and that there could be no basis for a finding of negligence by any employee of the government. Such crane under the evidence belonged to the United States Military Government. There was no explanation by it nor any showing that anyone else was using it or had any control over it. I am much inclined to the view that defendant, which should know whether one of its employees or a contractor had left the crane negligently where it could be expected to cause such an accident as here involved, having chosen to remain silent, is presumably responsible for the crane and the negligence of its driver, who presumably in the absence of any explanation was an employee of the government acting in the scope of his duties.

Defendant also denies that the road was a thoroughfare or public way or anything more than a military road merely called Highway No. 24. However, I am much inclined to the view that under the evidence Highway No. 24 was a thoroughfare.

Aside from the question as to the foreign character of Okinawa the most serious problem is in connection with what was "the law of the place where the act or omission occurred."

Plaintiff's complaint had no allegation as to such and no evidence was presented by either side on that question. Under a footnote in the recent and authoritative decision of the United States Supreme Court in United States v. Spelar, 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. ——, it would seem that plaintiff's failure to even allege what was "the law of the place where the act or omission occurred" may be fatal. Plaintiff's position is that the trial having been held that in the absence of any contrary showing it is presumed that the law of Okinawa is the same as that of the forum, to-wit, of California. There is much persuasion in the contention that under the circumstances the law of Okinawa must be presumed to be no different from that of California. But it must be remembered that it would still be the law of Okinawa and not that of California—any presumption being merely that those who established the law of Okinawa were not in disagreement with the provisions of the law of the forum.

But since I can come to no other conclusion than that Okinawa was and is foreign country it is not necessary to rule on the other questions presented although my inclinations are as previously stated.

Plaintiff's argument that Okinawa is not foreign country under the act is based substantially upon the following contentions: it is and since 1945 has been solely under United States Military occupation; it is not under United Nations Trusteeship nor the Far Eastern Commission; all Japanese control and government has terminated since 1945; Okinawa has no courts, no Diet, no executive branch; the United States Army supplies the only government

which is a military government; were it not for such military government a void in government would exist in Okinawa; the United States operates a naval, military and air base on the island and intends to do so indefinitely, various installations described as of permanent character have been and are being constructed by our armed forces, directly and through private contractors.

Plaintiff places great emphasis upon this language in the report of the Committee on Armed Services, House of Representatives, 81st Congress, 1st Session: "Okinawa is considered a firm United States Air Force installation that will be continued in use indefinitely. Although the United States' rights to Okinawa have not been clearly defined, it is expected that our tenure there will be of long duration." Plaintiff's contention, as stated in his brief, is that "it establishes a present intention of permanent acquisition which, together with actual conquest, has suspended Japanese sovereignty, * * * and which has resulted in the creation of American sovereignty."

On the other hand the defendant's contention that Okinawa is and has been foreign country is based substantially on the following points: ·it is a matter of common knowledge of which the court can take judicial notice; that the Secretary of State of the United States has administratively determined it is not a part or possession of the United States; there is no legislature on the island nor has Congress passed any laws in regard to it; the Commanding General of the United States Army merely makes such regulations as he deems advisable; if any law is applicable it is the Japanese law.

In the evidence is the following communication from the Department of State: "Okinawa is an island * * * over which Japan has been acknowledged internationally to be the sovereign. * * * No formal determination has been reached concerning the final disposition of Okinawa * * *. It is the view of the Department of State that * * * it is not a territory or possession of the United States."

·Even in the evidence submitted by plaintiff it is indicated that the view. of the Army is that "The island of Okinawa * * * is occupied enemy territory and under military government." and that "although the United States' rights to Okinawa have not been clearly defined it is expected our tenure will be of long duration."

Likewise in the printed transcript of the Hearings before the Committee on Armed Services, House of Representatives, 81st Congress, 1st Session on H.R. 4766, a bill to authorize certain expenditures, being exhibit 8 herein and on which plaintiff greatly depends, it is certainly indicated that both Congress and the Army considered Okinawa a foreign area. For on pages 3169 and 3170 this appears:

"Mr. Bates. (Representative in Congress from Massachusetts) Pardon me. I wonder, as a result of these permanent quarters, (referring to proposed appropriations for Okinawa) are we going to be able to extend the stay of those men in *foreign areas*? (Italics mine)

"Colonel Robertson. I doubt it, sir. Even with quarters on Okinawa, it is a pretty rough place. I think 3 years is about the maximum.

"Mr. Bates. It is pretty tough out there."

In Brewer v. United States, D.C., 79 F. Supp. 405, in a well-reasoned and very convincing Federal Tort Claims Act opinion Judge Goodman held Okinawa a foreign territory.

The opinions in Brunell v. United States. D.C., 77 F. Supp. 68 and Straneri v. United States, D.C., 77 F.Supp. 240, while involving other areas, are in general accord with Brewer v. United States, supra.

Moreover, the recent holding of the United States Supreme Court in the Spelar case, United States v. Spelar, 338 U.S. 217, 70 S.Ct. 10, 12, 94 L.Ed. ——, seems to me to be conclusive. The court said "In brief, though Congress was ready to lay aside a great portion of the sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United States to lia-

720

bilities depending upon the laws of a foreign power. The legislative will must be respected. The present suit, premised entirely upon Newfoundland's law, may not be asserted against the United States in contravention of that will."

■ This court notes judicially that in so far as any law existed in Okinawa at the time of the injury or since such was and is Japanese-enacted law. There are no courts on Okinawa and no law-making bodies. Congress has enacted no legislation therefor—it has only appropriated moneys to make our armed forces more comfortable and effective during an indefinite stay in conquered but foreign territory. Aside from Japanese laws there can only be army regulations which, of course, cannot satisfy the requirement of the Federal Tort Claims Act that the claim must be supported by "the law of the place where the act or omission occurred."

Even assuming the law of Okinawa is no different from that of California (the law of the forum) it must be remembered, as stated earlier in this opinion, that such law as existed in Okinawa is Japanese-enacted law—that is Japanese law.

Under the act this suit must be premised on the law of the place where the alleged negligent act occurred. See Wiltse v. United States, D.C., 74 F.Supp. 786. Therefore, paraphrasing to a degree the language of the Spelar decision it must be said "The present suit, premised entirely either upon Okinawa's Japanese law or upon no law, may not be asserted against the United States."

In closing I must acknowledge a great sympathy for the plaintiff and a hope that Congress will by appropriate special act grant him proper relief for the moral obligation which I feel the United States unquestionably owes him.

But unfortunately for plaintiff, regardless of his moral claim he has no legal claim in this court under the Federal Tort Claims Act.

The appropriate documents terminating this action, as above, may be presented after notice for signature and entry.