# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Submitted February 13, 2017         Decided June 13, 2017

No. 16-5053

KATHEY-LEE GALVIN AND BLAISE PELLEGRIN,
APPELLANTS

v.

UNITED STATES OF AMERICA, SOVEREIGN STATE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01761)

*Philip M. Musolino* was on the briefs for appellants.

*R. Craig Lawrence* and *Jeremy S. Simon*, Assistant U.S. Attorneys, were on the brief for appellee.

Before: TATEL and SRINIVASAN, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Kathey-Lee Galvin, a State Department officer, suffered severe injuries in her diplomatic housing when stationed overseas in Haiti. Galvin and her husband, Blaise Pellegrin,

brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680. The district court dismissed their suit, holding that their action fell within an exception to the Act's waiver of sovereign immunity for injuries arising in a foreign country. We agree with the district court.

I.

Because the district court dismissed the complaint, we assume the complaint's allegations to be true for purpose of this appeal. *Simon v. Republic of Hungary*, 812 F.3d 127, 135 (D.C. Cir. 2016). According to the complaint, Galvin worked as a political officer with the State Department and was assigned to the United States Embassy in Port-au-Prince, Haiti. The State Department provided Galvin and Pellegrin with diplomatic housing in the city. In January 2010, a magnitude 7.0 earthquake struck Haiti. The earthquake destroyed Galvin and Pellegrin's home while they were inside, severely injuring both of them.

Galvin and Pellegrin brought suit against the United States, alleging one count of negligence for the faulty construction and design of their diplomatic housing. They sued under the Federal Tort Claims Act (FTCA), which waives the United States's sovereign immunity for torts when "the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b)(1). The Act, however, contains a number of exceptions to the government's waiver of sovereign immunity. *See id.* § 2680.

Of relevance here, the FTCA's "foreign country" exception preserves the United States's sovereign immunity with regard to "[a]ny claim arising in a foreign country." *Id.* § 2680(k). The district court held that it lacked jurisdiction

over Galvin and Pellegrin's action pursuant to the foreign country exception. They now appeal the district court's dismissal of their action.

## II.

As the Supreme Court has explained, "a claim 'arising in a foreign country'" within the meaning of the FTCA's foreign country exception is "a claim for injury or harm occurring in a foreign country." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 704 (2004) (quoting 28 U.S.C. § 2680(k)). Galvin and Pellegrin acknowledge that they sustained their injuries while living in Haiti. They argue, though, that the diplomatic housing within which they suffered their injuries should not be considered part of "a foreign country" for purposes of the foreign country exception. They contend, in particular, that their diplomatic housing—which the State Department leased on their behalf— was controlled by the United States Embassy in Haiti.

Even assuming (without deciding) that all overseas diplomatic housing should receive the same treatment under the FTCA as a United States embassy, Galvin and Pellegrin's argument cannot be squared with our precedent. Our decision in *Macharia v. United States*, 334 F.3d 61, 69 (D.C. Cir. 2003), speaks directly to the issue in this case. There, we concluded that the FTCA's foreign country exception applied to injuries occurring at a United States embassy.

The claims in *Macharia* arose from the 1998 bombing of the United States Embassy in Nairobi, Kenya. *See id.* at 63. One of the questions in the case concerned whether the United States could be sued for the negligent day-to-day supervision of the guards at the Embassy. *Id.* at 69. The district court dismissed the suit, holding that "torts occurring on American embassies . . . are barred by the foreign country exception."

*Macharia v. United States*, 238 F. Supp. 2d 13, 27 (D.D.C. 2002) (internal quotation marks omitted). We affirmed the district court "in all respects," explaining that, because the Embassy guards' day-to-day supervisor was "located overseas—in this case, in Nairobi—[] the FTCA's sovereign immunity waiver does not [apply]." *Macharia*, 334 F.3d at 65, 69.

*Macharia*'s application of the FTCA's foreign country exception to a United States embassy abroad was consistent with our prior decisions construing the exception. In *Tarpeh-Doe v. United States*, 28 F.3d 120, 121 (D.C. Cir. 1994), we considered a suit seeking recovery for injuries arising in part from a doctor's treatment of a patient in the United States Embassy in Liberia. We assumed that, because of the foreign country exception, the plaintiffs could not bring an action based directly on the doctor's conduct in the Embassy. *See id.* at 123 n.1. And in *Beattie v. United States*, 756 F.2d 91 (D.C. Cir. 1984), *abrogated on other grounds by Smith v. United States*, 507 U.S. 197 (1993), we observed that "torts occurring on *American embassies* or military bases which are located in foreign countries are barred by the foreign country exception." *Id.* at 97 (emphasis added); *see also United States v. Spelar*, 338 U.S. 217, 218-20 (1949) (holding that the foreign country exception covered injuries suffered at a United States military base in Newfoundland maintained pursuant to a 99-year lease with Great Britain). That understanding forecloses Galvin's and Pellegrin's claim in this case.

In arguing otherwise, Galvin and Pellegrin rely in large measure on the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95. The treaty, however, predates our application of the foreign country exception to a United States embassy in *Macharia*. In any

event, the treaty would not call into question our understanding of the foreign country exception.

It is true that, under the treaty, embassies are "inviolable," such that the host country generally cannot send agents inside without permission. *Id.* at 3237. But the treaty's terms also indicate that foreign embassies sit within the host country's territory. Article 21, for instance, calls for the receiving state to facilitate diplomatic accommodations in "*its* territory." *Id.* (emphasis added). Accordingly, the State Department recognizes that, "[d]espite widespread popular belief, . . . [U.S. diplomatic or consular facilities] are not part of the territory of the United States." *See* U.S. Dep't of State, 7 Foreign Affairs Manual 1113 (2009). Rather, "diplomatic envoys are in reality within the territories of the receiving states." 1 *Oppenheim's International Law* 1091 & n.4 (Robert Jennings & Arthur Watts eds., 9th ed. 2008). "U.S. embassies and consulates abroad," in short, "remain the territory of the host state." U.S. Dep't of State, *What Is a U.S. Embassy?*, Discover Diplomacy, https://diplomacy.state.gov/discoverdiplomacy/diplomacy101/places/170537.htm (last accessed June 5, 2017).

Galvin and Pellegrin submit that, even if a United States embassy abroad sits in the receiving state's territory, the United States can exercise "some jurisdiction"—*viz.*, a form of "concurrent jurisdiction" with the receiving state—over conduct in its embassies. *See Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 839 (D.C. Cir. 1984). The same is presumably true, however, of United States military bases and hospitals in foreign territory, *see id.* at 841; 18 U.S.C. § 7(9)(A), yet the FTCA's foreign country exception encompasses those United States facilities. *See Spelar*, 338 U.S. at 218-20; *Broadnax v. U.S. Army*, 710 F.2d 865, 867 (D.C. Cir. 1983). So too with United States embassies abroad,

a result we reached in *Macharia* and reaffirm today. *Accord Meredith v. United States*, 330 F.2d 9, 10 (9th Cir. 1964).

\* \* \* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*