Hillsborough, } No. 3047.
April 4, 1939. }

ELEANOR P. MANNING *v.* THE LEAVITT COMPANY.

*Paul J. Doyle* and *John J. O'Reilly, Jr.* (*Mr. Doyle* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

PAGE, J. The plaintiff's declaration alleged that the defendant, on March 21, 1935, owned, operated and maintained a beauty parlor in Manchester known as "Leavitt's Beauty Salon"; that on that day the plaintiff went to the salon and asked for and received a treatment for her hair known as permanent waving; that the defendant, through its agents and servants, gave the treatment in such a negligent manner that the plaintiff's hair was burned and fell off; that in consequence she has suffered great mental anguish and deep mortification because of her disfigurement. The evidence tended to prove, besides the consequences alleged, that when the plaintiff's hair came out again the singeing resulted in its becoming coarse and grey.

The evidence failed to prove the allegation that the salon was operated by the defendant or that her damages resulted from the negligence of any person who was in fact the defendant's servant. It is not disputed that the defendant conducted a department store, that it leased a portion of its premises to one Chierney for his use as a beauty parlor, that the defendant had no actual control over the salon or its operations, that Chierney had full ownership and control of it, that he had sole authority over its instrumentalities and that all of the employees in the salon were his servants and subject to no control by the defendant.

Among the devices used in the salon was a machine for giving permanent waves. This applied heat to the hair by means of a current of electricity. There was a switch controlled by a clock which could be set in such manner that the electric current might be cut off after any determined time for the application of the heat. There was also another switch, controlled by the hand of the operative, who was supposed to stand by constantly during the treatment and consult her watch, so that if the automatic device failed she could cut off the current. The proper time for application of the heat varies from seven to fourteen minutes, according to the quality and condition of the hair to be treated. It could be found that the current was applied for a much longer time than fourteen minutes, with the result that the plaintiff suffered the injuries alleged and proved. It does not affirmatively appear whether the clock-switch was properly set. If it was not, the operative could be found to have been negligent. If it was, and the switch failed to operate, the operative could be found to have been negligent in failing to stand by continuously during the treatment and to check the time with her own watch.

The plaintiff was herself skilled in the process of permanent wav-

ing, had attended a school where it was taught, had operated a beauty parlor of her own, and was her own expert witness as to what due care required under the circumstances. During the time that she was in the chair, it occurred to her that the treatment was a long one. She was unable to see the clock, which was behind her, and had no means of knowing the time positively. She expressed her doubt to the operative, who said that different machines took different times, and completed the process. Under these circumstances reasonable men were not compelled to find that the plaintiff was guilty of negligence which contributed to her injuries, however close that question might be.

Though there was no evidence that any agent or servant of the defendant was guilty of negligence, it was suggested in brief and argument that the defendant might be liable as an invitor under the authority of *Frear* v. *Company*, 83 N. H. 64. In the broad sense the invitation theory has no application to this case. Even if there were an invitation by the defendant, which is doubtful (*Jackson* v. *Company*, 86 N. H. 81), a lessor is liable for bodily harm to his invitee only when it results from an unsafe condition of the premises caused by negligence of the lessor. The negligence must be in the performance of a duty either to make the premises safe before delivery to the lessee, or to keep them safe while in the lessee's possession.

This plaintiff's injuries were not due to any want of care with respect to the condition of the premises. The duty of the invitor-lessor does not extend to matters having to do merely with the lessee's management or operation of premises which would be safe but for such management or operation, at least where the lessee is in sole actual control, as was true in this case. The fact that a fault of the lessee or his servant commonly concurs with the lessor's failure to see to the safety of the premises should not blind us to the basic principle, upon which the invitation cases rest, that the lessor in ordinary circumstances cannot be held for the lessee's fault, but solely for his own. *Bernier* v. *Society*, 88 Conn. 558, 563, 564; *Luhi* v. *Phoenix Lodge*, 31 Haw. 740, 746, 747; *Wilson* v. *Company*, 275 Mass. 422, 424, 425; *Knottnerus* v. *Company*, 93 Mich. 348; *Roark* v. *Company*, 209 Mo. App. 638; *Gray* v. *Corporation*, 93 Mont. 397, 405; *Reisman* v. *Corporation*, 82 N. J. L. 464; *Roper* v. *Society*, 120 N. Y. Supp. 644; *Oles* v. *Society*, 260 N. Y. Supp. 863, 865 (distinguishing cases of estoppel); *Tulsa &c. Company* v. *Greenlees*, 85 Okla. 113; Restatement, Torts, ss. 357-362, 419, 420; *Sargent* v. *Stark*, 12 N. H.

332; *Scott* v. *Simons*, 54 N. H. 426; *Towne* v. *Thompson* 68 N. H. 317; *Frear* v. *Company, supra.*

The plaintiff testified, when asked how she happened to go to the Leavitt Store for service: "Leavitt's always advertised very extensively, and I saw their advertisement in a Manchester paper, and I thought it was a good store and I went in there," which may be taken as a statement that she understood that the advertisement was inserted by the defendant. "*The Court:* They advertised extensively what? *The Witness:* Permanent waving." Immediately after her treatment the attendant gave her a card, which was in evidence. This card read: "Leavitt's Beauty Salon Leavitt's Dept. Store  A Complete Beauty Service for Milady 2nd. Floor Manchester, N. H."

The only other pertinent evidence bearing upon an estoppel came from the defendant's manager, who testified that Chierney, the lessee and operator of the salon, did all of his own advertising, and the defendant had nothing to do with it beyond the fact that it permitted him to use the Leavitt name, whether as The Leavitt Company or as the Leavitt Beauty Shop the witness was uncertain. Chierney's shop, this witness testified, was connected by telephone through an extension of one of the instruments listed in the defendant's name, and entrance to the salon was through the defendant's store and by means of the defendant's elevator.

It is to be taken as established that the defendant did not itself advertise the salon as operated by it, but it could be found that the plaintiff was justified in believing that it did, and that such belief was based upon appearances actively permitted by the defendant. The court charged the jury as follows: "So if you find that the plaintiff saw the advertisement as she said she did and went there for a permanent wave, believing that she was dealing with the Leavitt Company, and that she sustained the injury claimed by reason of the negligence of one of Mr. Chierney's operators, then the Leavitt Company will be answerable in damages, provided the plaintiff herself was in the exercise of due care at the time she received the permanent wave." To this instruction the defendant excepted. If the charge was erroneous as a matter of law, there must be a new trial. If it was correct, and the evidence was insufficient to make out a case of estoppel, the exceptions to the denial of a nonsuit and directed verdict must be sustained. All of these exceptions may be considered together.

The evidence was sufficient to establish all of the necessary ele-

ments of an estoppel: (1) a representation made with the authority of the defendant that it conducted a beauty parlor, under such circumstances that the defendant could foresee that women might act upon it to their possible prejudice, thus imposing upon the defendant a duty to avoid the misapprehension, (2) a belief in the mind of the plaintiff that the fact was as thus misrepresented, and a submission to the care of the shop and its employees in reliance upon that belief, and (3) consequent prejudice to the plaintiff. *Conway Bank* v. *Pease*, 76 N. H. 319, 323. The defendant has urged the view that it could not be found that the plaintiff has been prejudiced by its failure to correct the misapprehension which had been created with its knowledge and consent. The argument is that it does not appear that Chierney cannot answer in damages, consequently the plaintiff can show no loss to herself.

We think that the argument does not bear analysis. It could be found that the defendant ought to have anticipated that women would act upon the appearance that it had a share in creating. Equally it could be found chargeable with a reasonable apprehension that some customer might be injured through the negligence of Chierney's servant whom it had permitted to appear as its own servant. If one without fault was thus injured, in justifiable belief that the negligence was that of one for whose conduct the defendant was responsible, it must also be in contemplation, if the defendant's argument is sound, that the injured person must (1) bring her action against the apparent defendant on the theory of *respondeat superior*, then finding her error, (2) sue Chierney, and upon failure to collect from him, (3) sue the defendant again and finally recover on the ground of estoppel. All this, if the defendant be now correct as a matter of law, the defendant could have foreseen from the beginning. The necessity of bringing two or three suits in good faith (one of them against the non-resident Chierney), in order to make one recovery, would be all the prejudice that the plaintiff need to show was not foreseen by her when she took appearances created by the defendant at their face value. That prejudice is inherent in the situation.

The case of first impression on the subject seems to be *Dickinson* v. *Winchester*, 4 Cush. 114, where a hotel advertised "Free carriage to and from the cars," a service which it contracted out to a hackman. It was held that the proprietor of the hotel was estopped to set up the fact that the hackman was not his servant, subject to his control as to matters of detail. The same principle has been

applied several times to innkeepers (as in *Bather* v. *Day*, 8 L. T. Rep. (N. S.) 205; *Adelphia Hotel Co.* v. *Company*, 277 Fed. 905), and at least once in a department-store case, hard to distinguish from the one before us (*Hannon* v. *Company*, 167 N. Y. 244, 247). In the case last mentioned, where the dental department was let out to an independent contractor, it was said that "the plaintiff had a right to rely not only on the presumption that the defendant would employ a skillful dentist as its servant, but also on the fact that if that servant, whether skillful or not, was guilty of any malpractice, she had a responsible party to answer therefor in damages." See also the note on this case in 1 Columbia L. R. 488; Burdick, Torts, (3d *ed.*), s. 160; Restatement, Agency, s. 267.

In *Frear* v. *Company*, 83 N. H. 64, the defendant was held to be estopped to deny that it had such control of the premises sublet as appeared by its representation. The control, if in fact existent, would have given rise to a duty of due care to keep the premises reasonably safe. In that case the estoppel rested upon the expressed invitation to visit unsafe premises apparently within its control. Here it rests upon expressed permission given by the defendant to the lessee to advertise the department as if it were owned and managed by the defendant. Here, as in the *Frear* case, if the defendant wished to avoid the duty to act in reference to the situation thus apparently created, it should have refused to be a party to the misrepresentation and have taken steps reasonably calculated to remove misapprehension from the public mind. The defendant authorized the lessee to speak with a voice simulating the defendant's voice. Its only complaint now is that it did not intend thereby to make its responsibility coincide with the permitted representation. If it had no such intention, it should have seen to it that the public were warned of that fact, for it had had a share in creating a situation from which the intention, denied after the damage, could reasonably have been inferred.

Though the charge was brief, it covered the legal and factual situation sufficiently for intelligent action by the jury. The motions for a nonsuit and a directed verdict were properly denied.

The defendant's counsel asked the defendant's manager whether there was a custom of department stores to operate their own beauty parlors. The question was excluded, subject to exception, but the court left opportunity for the defendant to show the plaintiff's knowledge of the custom if it existed. The opportunity given was not followed up. There seems to be no common knowledge of such

a custom. Since an answer that there was such a custom could not have altered the situation as it appeared to the plaintiff, there was no error in excluding it.

The defendant excepted to the admission of (1) certain evidence relevant to the issues of fact that tended to raise an estoppel, (2) a conversation with the operative at the time of the treatment as to whether or not her hair was burned, and (3) her state of mind when friends remarked upon her grey hair, and "dead wig." No error is seen.

The defendant excepted to an argument by the plaintiff's counsel based upon the assertion that Miss Plourde, who gave the treatment, was uninstructed and inexperienced. The argument ended thus: "I don't see any reason why the Leavitt Company couldn't have found out what Miss Plourde's qualifications were before she went to work for them." Upon objection that Miss Plourde's qualifications were not in issue, there was a long colloquy. For some time counsel for the plaintiff clung to the position that competency was in issue, but the court pointed out, and counsel admitted, that there was no evidence as to the training or apprenticeship necessary to competency. Counsel for the plaintiff then shifted ground and said: "I am simply asking the jury to consider the amount of experience, not as a ground of negligence [in hiring an incompetent person], but whether the person was negligent or not. I argue that an inexperienced person is more apt to be negligent than an experienced one." There he insisted upon leaving his former argument, subject to exception. Then he added to the jury: "In basing my argument on her training, I am asking you to consider the amount of training she received before this accident on the probability of the thing happening as the plaintiff claims." To this there was a further exception.

The logic was so doubtful as perhaps not to impress the jury, though if it impressed counsel it might impress them. The operation performed by Miss Plourde, as far as timing was concerned, was simple; the danger of failing to check the time was one in which she had been instructed from the first. Even short experience was of doubtful effect as predisposing one to forget to check the time under such circumstances. But at the time of the accident Miss Plourde had about two and a half years of experience in a beauty parlor, and about two and a quarter years of experience in giving permanent waves. Neither the record nor common knowledge would justify the finding that she was then so inexperienced that she was "more

apt to be negligent than an experienced person," however that may be defined. The exceptions to this argument are sustained.

There was an exception to the statement in argument by the plaintiff's counsel that the defendant's medical expert had testified that if the plaintiff's hair broke off and later came out grey and coarse "he would say that something must have happened from this treatment to the construction of her hair or to the pigment itself." The witness whose testimony was thus paraphrased took a position the exact opposite. Objection being made, the court told the jury to recollect the evidence and, if counsel misstated it, to take their own recollection. The court was under no duty to do more unless the defendant pursued the objection further. If the defendant had requested the reading of the record and the court had then permitted the argument to stand (*Carr* v. *Orrill*, 86 N. H. 226) the exception would have been sustained. As matters stand it is overruled. Recourse to the record for the purpose of ascertaining the testimony in dispute would, in this instance, have been practicable and expeditious.

Since there must be a new trial, it is unnecessary to consider the questions raised by the motion to set the verdict aside. The defendant's requests for instructions raise no question except the possibility that the court might have been more explicit with regard to the bearing, upon the contributory negligence of the expert plaintiff, of her failure to insist upon the turning off of the current. As we have already intimated, her failure to do that does not charge her as a matter of law, but was to be considered in the light of all, the circumstances.

*New trial.*

All concurred.