**Clifford F. WARD and Elna Ward, Plaintiffs,**

**v.**

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 7083.**

United States District Court
D. Colorado.

June 30, 1962.

Truman C. Englehardt, Atty. at Law, Denver, Colo., for plaintiffs.

Merle R. Knous, Asst. U. S. Atty., for District of Colorado, Denver, Colo., for defendant.

ARRAJ, Chief Judge.

This is an action brought by plaintiffs for the alleged wrongful death of their minor daughter. Jurisdiction is based on Chapter 171 of Title 28 U.S.C. and on Section 1346(b).

On June 7, 1959, defendant owned the recreation area at Lake Hasty near the John Martin Dam in Bent County, Colorado. Defendant had leased the area to the Southeastern Colorado Recreation As-

sociation. A part of Lake Hasty was used as a swimming pool; defendant had constructed a diving pier adjacent to the pool. The public was invited to use the pool for swimming and signs inviting the general public to use the swimming facilities were erected and maintained by defendant; such signs bore the insignia of the Corps of Engineers. On Sunday afternoon, June 7, 1950, Esther Ruth Ward, the then sixteen year old daughter of plaintiffs, was swimming and playing in the swimming pool area and was then and there drowned. Immediately prior thereto, some young boys, whose identities were not known or disclosed, had been "ducking" Esther and apparently after one such ducking she did not return to the surface. At the time of the incident, there was no lifeguard on duty to supervise the activities of the swimmers or to rescue any one in danger of drowning in the pool. Shortly after the disappearance of Esther a woman who had been watching the children playing alerted those in the vicinity, and soon thereafter some young men commenced diving and searching for the body of Esther; and after several minutes the body was discovered at the bottom of the pool. It was brought to the surface and several unsuccessful attempts to revive the decedent were made by means of artificial respiration and resuscitation. At the time of the incident, the resident engineer and assistant resident engineer, both employees of defendant, were in the main dock area of the reservoir supervising the launching of pleasure boats and issuing permits for the boats to be on the reservoir.

Just prior to her death, plaintiffs' daughter had completed the eleventh grade in high school. She was a normal girl, in good physical and mental health. She possessed a good, untrained singing voice and at times assisted her father, an evangelist, in the musical phase of his evangelical work. She was obedient, industrious and friendly. Decedent's father's primary occupation was that of an evangelist and preacher of the gospel; her mother's primary occupation was that

of a housewife. There were four younger children, three of whom are still in the home. The father's annual income was approximately three thousand dollars. Both he and his wife were thirty-seven years old at the time of their daughter's death.

Plaintiffs claim for relief is based on the provisions of Chapter 41, Article 1, C.R.S. 1953 As Amended. This is the wrongful death statute and the maximum recovery thereunder is twenty-five thousand dollars. Plaintiffs claim damages in the amount of sixty thousand dollars and assert that the provisions of the statute limiting the recovery to twenty-five thousand dollars was unconstitutional. Prior to trial the Court held that it was not.

Plaintiffs contend that defendant was negligent in failing to provide a lifeguard at the pool to supervise the activities of the persons using the pool and to aid swimmers in distress. In essence, the defendant has questioned its capacity to be sued, has asserted that an unavoidable accident was involved, has denied that its negligence, if any, was the proximate cause of the drowning, and, finally, has maintained that as lessor of the premises, it was released from all liability for personal injuries sustained on the demised premises.

As a preliminary matter, the Government has brought into focus the question of its capacity to be sued for the acts complained of in this action under the Federal Tort Claims Act. In this regard Gilroy v. United States, D.C.D.C. 1953, 112 F.Supp. 664, and Williams v. City of Longmont, 109 Colo. 567, 129 P.2d 110, 142 A.L.R. 1337 (1942), appear to be cited for the proposition that the supervision of public swimming facilities is a "governmental" function for which no action will lie against a municipality, in which capacity the defendant herein seems to assert that it was acting.

In Gilroy the United States was sued for breaching its duty to properly maintain curbing on the streets of the City of Washington. Judge Holtzoff, in choosing a broad basis of liability under the substantive law of the jurisdiction in which the Court was sitting, construed the amenability of the United States to suit "as a private individual" to include actions against the Government in the capacity of a municipal corporation.

■ Some confusion seems to exist in Colorado insofar as the characterization which governs the functions of a municipality that has failed to provide a lifeguard for its swimming facilities. Compare City of Longmont v. Swearingen, 81 Colo. 246, 254 P. 1000 (1927), with Williams v. City of Longmont, supra. However, the position of the Colorado courts on this point is not determinative here, for it appears that the Federal Tort Claims Act contemplates the granting of relief against the United States in many situations which, if a municipal corporation were involved, would find the Government engaged in activities which could be characterized as "governmental". For example, in Dye v. United States, 6 Cir., 1954, 210 F.2d 123, recovery was permitted against the United States under the Federal Tort Claims Act for the deaths of two boat occupants which resulted from the Government's negligent failure to use protective measures and to give adequate warning of dangerous conditions while acting in the capacity of operator of a dam. With regard to the scope of the Government's liability under the Act, the Court stated at 210 F.2d on page 128:

"The Supreme Court, in United States v. Yellow Cab Co., 340 U.S. 543, 547, 550, 71 S.Ct. 399, 95 L.Ed. 523, said that the Federal Tort Claims Act, in sweeping language, waives in favor of an injured person the government's immunity from suit; and that the general trend toward increasing the scope of the waiver by the United States of its sovereign immunity from suit is inconsistent with whittling it down by refinements. In Spelar v. United States, 2 Cir., 171 F.2d 208, 209, [70 S.Ct. 10, 94 L.Ed. 3] it was held

that the policy of governmental generosity toward tort claimants established by the Federal Tort Claims Act should not be set aside or hampered by a niggardly construction, particularly with respect to the broad terms of coverage."

■ This Court concludes, therefore, that the United States may only assume the legal characteristics of a municipal corporation in actions brought against it under the Federal Tort Claims Act when the activities in issue are those normally performed by a municipal corporation, which, as in Dye, is engaged in the execution of specifically authorized duties incidental to the regulation and administration of the local affairs of an incorporated area for the benefit of the local community. See Rhyne, Municipal Law, Section 1–2 (1957); 1 McQuillan, Municipal Corporations, Section 2.07 (3 ed. 1949). Since the authority and the activities of the Government in the instant case were not directed primarily toward the local affairs of any given community, the legal concepts governing the liability of municipal corporations are not available to it; hence, for the purposes of this case, the United States has acted in the capacity of a private proprietor.

The defendant has alleged that the drowning was the result of an unavoidable accident for which it could not be held responsible, thereby indicating that its failure to provide a lifeguard could not constitute negligence. However, Colorado law does not seem to support this position, for in the Swearingen case the Colorado court declared at 81 Colo. on page 251, 254 P. on page 1002:

"That the absence of a life guard, in the circumstances shown here, may be negligence, cannot well be disputed, and we think is sustained by the authorities."

See also Williams v. Delta Swimming Pool, Inc., 89 Colo. 586, 5 P.2d 583 (1931). On this point Colorado appears to be in accord with the weight of authority. See 48 A.L.R.2d 104, 126; 52 Am.Jur. Theaters, Shows, Exhibitions, Etc. Section 71; 86 C.J.S. Theaters & Shows § 42f.

The Government next contends that even if it were negligent in failing to provide a lifeguard, such negligence was not the proximate cause of the drowning; rather, the defendant asserts that the death resulted from the intervening wrongful conduct of third persons. This view appears to be supported to a certain extent by language contained in Williams v. City of Longmont, supra, which declares that a municipality could not be held liable for injuries sustained because of negligent conduct on the part of third persons. However, in that decision supervision of crowds in public places was said to be a "governmental" function, thereby absolving the municipality from liability. Here, of course, the United States is being sued as a private individual, and in this regard Section 449 of the Restatement of Torts lays down the following rule:

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby."

See also Prosser On Torts (2d ed. 1955) pp. 139–143, 268–270; 38 Am.Jur., Negligence Section 70; 65 C.J.S. Negligence § 111f. Colorado has had occasion to use similar language. Jensen v. South Adams County Water & San. Dist., Colo., 368 P.2d 209 (1962); Colorado Mortgage and Investment Company v. Rees, 21 Colo. 435, 42 P. 42 (1895).

■ This Restatement approach has also been applied in several cases involving swimming facilities where a finding of negligence on the part of the proprietor was based upon a failure to adequately guard against boisterous conduct and horseplay among those who used the facilities. Quinn v. Smith Co., 5 Cir., 1932, 57 F.2d 784; Gordon v. Hotel Seville, (Fla.App.) 105 So.2d 175 (1958); Hill v. Merrick, 147 Or. 244, 31 P.2d 663

(1934). While the Colorado courts apparently have not spoken with regard to the supervision of the patrons of swimming facilities, it has been indicated that proprietors of such facilities in Colorado have a duty to use reasonable care in maintaining the premises in a reasonably safe condition *"for the purpose for which it is designed and to which it is adapted"*; such premises must be kept in a "suitable condition for the purpose for which *they are ordinarily used in a customary way.*" Webb v. Thomas, 133 Colo. 458, 296 P.2d 1036 (1956). And in Lakeside Park Co. v. Wein, 111 Colo. 322, 141 P.2d 171 (1943), a case wherein a patron of the defendant amusement park was injured as a result of the activities of other patrons, it was said that proximate cause was established in that the proprietor could have reasonably anticipated such injury as occurred in view of the nature of the activities involved. See 29 A.L.R.2d 911; 20 A.L.R.2d 8.

Accordingly, this Court requires no direct evidence establishing "that if a life guard had been present death would not have resulted;" rather, all that need be established for the requisite causal connection are such facts as would indicate with reasonable probability that the drowning resulted from the negligence of the defendant in failing to provide a lifeguard. See City of Longmont v. Swearingen, supra, 81 Colo. at pages 250 and 251, 254 P. 1000. Thus, when it is reasonably probable that the antics flowing from the unleashed energy and extravagance of youth may result in serious bodily injury, as in swimming areas, a basis exists for finding that the negligent lack of supervision is the proximate cause of such injury. Since in the case at hand the harm suffered by the deceased was the result of such circumstances, proximate cause was established.

Lastly, the defendant contends that by reason of its status as lessor, when coupled with the corresponding possession and control of the area in the recreational association, it is relieved of all liability for injuries sustained by third persons on the premises.

A lessor, though, is not completely and automatically absolved of liability for injury sustained on the demised premises merely through the execution of a lease. For instance, it is well settled that when the lessor has reason to believe, at the time of letting, that the leased premises will be used by large numbers of the general public, including use for amusement purposes, he may be responsible for injuries sustained by those patronizing said premises due to some dangerous or unsafe condition situated thereon. Gilligan v. Blakesley, 93 Colo. 370, 26 P.2d 808 (1933); Colorado Mortgage and Investment Company, Ltd. v. Giacomini, 55 Colo. 540, 136 P. 1039, L.R.A.1915B, 364 (1913); 2 Powell On Real Property Para. 239; Prosser On Torts (2 ed. 1955) p. 468; Restatement of Torts Sections 359, 360; 32 Am.Jur., Landlord and Tenant §§ 667, 668; 52 C.J. S. Landlord and Tenant § 442. In other instances, lessors have been subjected to liability where injuries have been caused by conditions on portions of the demised premises remaining in control of the lessor or by instrumentalities under the lessor's supervision and regulation which affect the leased property. See Campbell Inv. Co. v. Hirsh, 112 Colo. 505, 150 P.2d 310 (1944); 2 Powell On Real Property Para. 238; Restatement of Torts, Sections 360, 361; 26 A.L.R.2d 468; 52 C.J.S. Landlord and Tenant § 418, page 61. Also, a lessor who actively invites patronage of the leased premises or who permits his name to be used by the lessee in attracting invitees onto the demised premises may be estopped to deny responsibility for injury incurred thereon as the result of negligent activities of the lessee. Manning v. Leavitt, 90 N.H. 167, 5 A.2d 667, 122 A.L.R. 249 (1939); 32 Am.Jur., Landlord and Tenant Section 651; cf. Frear v. Manchester Traction, Light & Power Co., 83 N.H. 64, 139 A. 86, 61 A.L.R. 1280 (1927).

The controlling Colorado authority seems to be found in Lakeside Park Company v. Wein, supra, which involved the liability of the proprietor of an amusement park that had leased a portion

of the area to a group of employees for a day, said liability stemming from injuries sustained by reason of the lessee's activities. In holding the lessor responsible, the Colorado court, at 111 Colo. on page 325, 141 P.2d 171, 172, declared:

"The principal point argued here is that the railway employees acted in the capacity of an independent contractor, or concessionaire, and had exclusive control of the premises. We are of the opinion, however, that such relationship was not established by the evidence. Several elements of control, including that of a general policing of the premises, remained in the park management and it is not suggested that the latter could not have forbidden this particular contest, and, even though not forbidden, we think it should have taken the reasonable precaution of keeping spectators of the contest safely out of range of any thrown rolling pins."

 The evidence introduced herein does not indicate that the Government had relinquished complete control of the swimming area which it had created to the lessee. For instance, testimony of an officer of the recreational association showed that the lessee engaged in no substantial undertakings with respect to the physical condition of the premises without first consulting and obtaining approval of the Government's engineer in charge of the entire project. It was also shown that the Government contributed substantially more funds than the association for developing the swimming area, even after the execution of the lease. The fact that the Government's agents were issuing boating permits for the main reservoir on the day of the mishap indicates that they were supervising the recreational use of the Federal project's waters. As noted before, the signs posted in the area which informed the public of the swimming facilities bore the Corps of Engineers emblem. And finally, under the terms of the lease itself, the Government required that the leased property be open to public use generally.

On the other hand, there is little indication that the lessee recreational association exercised any control over the swimming facilities other than as operator of a concession stand on the premises. Indeed, there is no evidence that the public was made aware of the lessee's existence as operator or proprietor of the swimming area.

Therefore, in view of the emphasis placed upon the lessor's retention of control, as announced in Lakeside Park Company v. Wein, supra, this Court is of the opinion that when, as the facts of this case show, the lessor of recreational facilities retains substantial control over the leased premises, in addition to the setting apart of an area specifically for swimming, the construction of facilities for such purposes, and the posting of signs which may induce the general public to believe that such lessor-invitor has taken measures to safeguard the activities therein, Colorado courts would place the duty of requiring reasonable supervision on the lessor.

Finally, the lease governing the use of the area in question contains the following clause:

"5. That the United States shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the use and occupation of the said premises, nor for damages to the property of the lessee, nor for damages to the property, or injuries to the person of the lessee's officers, agents, servants or employees, or others who may be on said premises at their invitation or the invitation of any one of them, arising from or incident to the flooding of the said premises by the Government or flooding from any other cause, or arising from or incident to any other Governmental activities; and the lessee shall hold the United States

harmless from any and all such claims, except as otherwise provided in Condition No. 18."

Applying federal law, an exculpatory clause similar to this one was upheld against a claim that it was contrary to public policy in United States v. Starks, 7 Cir., 1957, 239 F.2d 544. However, in the opinion of this Court such a clause does not operate to relieve a lessor from liability under circumstances such as those presented herein.

■ First, it is noted that the invitee herein was not a party to the lease, a fact which indicates that its terms should not be binding on the claimant in an action sounding in tort. See Seigel v. Detroit City Ice & Fuel, 324 Mich. 205, 36 N.W. 2d 719 (1949); Comment, 54 Nw. U.L. Rev. 61, 70-71 (1959). But of more significance is the fact that even if the terms of the lease were binding upon the parties in this suit, in view of the foregoing reasoning it cannot be said that the decedent was on the leased premises at the invitation of the lessee; instead, the substantial amount of control exerted by the Government over the property, including the signs which directed the public to the swimming area, indicates that the United States, under the facts outlined herein, was the apparent invitor. Therefore, the defendant was not relieved of its burden of providing reasonable supervision over the demised property by reason of the exculpatory clause in the lease.

In accordance with the views expressed above this Court finds that the defendant's failure to provide or require reasonable supervision of the leased swimming facilities constituted negligence which was the proximate cause of the injury complained of and for which the plaintiffs are entitled to relief.

■ After due consideration of the decedent's age, education, special abilities and character, also of plaintiffs' respective ages and life expectancies and of other relevant factors, it is concluded that $10,200.00 is a fair and just award to be made to the plaintiffs jointly pur-

suant to Chapter 41, Article 1, C.R.S. 1953 As Amended.

Inasmuch as this Opinion contains a statement of the facts as found by the Court and the Court's conclusions thereon, the Court is of the opinion that no formal Findings of Fact and Conclusions of Law need be entered.

An appropriate Judgment will be entered in accordance with this Opinion.