ECKERLE *v.* TWENTY GRAND CORPORATION.

OPINION OF THE COURT.

1. APPEAL AND ERROR—NONJURY CASE—FINDINGS OF FACT—CREDI-
BILITY—PREPONDERANCE OF EVIDENCE.

A trial judge in a nonjury case may give such weight to the
testimony as in his opinion it is entitled to, and his findings
will not be reversed unless the evidence clearly preponderates
in the opposite direction.

2. SAME—COURT OF APPEALS—SCOPE OF REVIEW.

The Michigan Court of Appeals is not restricted to reviewing
the reasons for the trial court's opinion.

3. SAME—REASON FOR DECISION—RESULT.

Trial court's correct disposition of case will not be disturbed
because that court gave wrong reason for its decision.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 839.
[2, 6] 5 Am Jur 2d, Appeal and Error § 727.
[3] 5 Am Jur 2d, Appeal and Error §§ 727, 785.
[4, 5] 32 Am Jur, Landlord and Tenant §§ 648–652.
[7, 9] 28 Am Jur 2d, Estoppel and Waiver §§ 33, 45; 32 Am Jur,
Landlord and Tenant § 651; 38 Am Jur, Negligence § 94.
[8] 8 Am Jur 2d, Bailments §§ 306, 307, 309, 313.
[10] 8 Am Jur 2d, Bailments §§ 306, 314.
[11] 8 Am Jur 2d, Bailments § 342.
[12] 8 Am Jur 2d, Bailments § 306.
[13] 5 Am Jur 2d, Appeal and Error §§ 760, 761.
[14] 28 Am Jur 2d, Estoppel and Waiver §§ 26, 27.
[15] 8 Am Jur. 2d, Bailments § 306; 32 Am Jur, Landlord and Ten-
ant § 651.
[16] 17 Am Jur 2d, Contracts §§ 77, 240, 241.
[17] 17 Am Jur 2d, Contracts §§ 294, 297.
[18, 19] 8 Am Jur 2d, Bailments § 306.

---

* Continued from Volume 7 Mich App.

4. LANDLORD AND TENANT—LEASE—LIABILITY.

The execution of a lease does not completely and automatically absolve a lessor of liability for injury sustained on the demised premises.

5. SAME—ESTOPPEL.

The lessor is estopped to deny that he had such control of the premises as appeared by his representation, when he holds himself out as the rightful occupant and third parties are invited to use the premises.

6. APPEAL AND ERROR—NONJURY CASE—FINDINGS OF FACT.

Findings of fact shall not be set aside, in a nonjury trial, unless clearly erroneous (GCR 1963, 517.1).

7. ESTOPPEL—PARKING LOT—OWNERSHIP.

Defendant owner of parking lot premises, who operated the lot as an inducement to the general public to patronize his adjacent bowling alley and nightclub, effected an estoppel preventing denial of control of the parking lot.

8. BAILMENT—EVIDENCE—BURDEN OF PROOF.

It is for the defendant bailee to explain the loss and exonerate himself, once a bailment is established and bailor has made out a prima facie case, and to this extent a burden rests upon the defendant; but, if this question of fact becomes a disputed one, the evidence of the plaintiff must preponderate.

9. SAME—LEASE—ESTOPPEL.

Trial court's holding in nonjury action for damage to bailor's automobile after being stolen from parking lot adjacent to defendant's bowling alley and nightclub and which had been leased by defendant to third person, that lease of lot should be disregarded and that defendant was bailee of plaintiff's automobile although the parking lot had an obscure sign which indicated it was managed by third person, is upheld by Court of Appeals on theory that parking lot manager was acting as agent for defendant under actual or apparent authority and estopped defendant from denying control of the lot.

10. SAME—STOLEN CAR—EXONERATION FROM LIABILITY.

Bailee owner of parking lot which failed to return either automobile or keys thereto upon demand by bailor *held*, to have failed to exonerate itself from liability for damages to car subsequently recovered after having been stolen from the lot.

DISSENTING OPINION.

LESINSKI, C. J.

11. BAILMENT—APPEAL AND ERROR—MOTIONS—DIRECTED VERDICT—
PRINCIPAL AND AGENT.

Trial court erred in not granting defendant's motion for directed
verdict of no cause of action at conclusion of plaintiff's case,
where plaintiff failed to establish that defendant had any
real or apparent responsibility for the lot on which his car
was parked when stolen or that any persons on the lot
were employees or agents of defendant owner, there being
a failure to establish a bailment with defendant.

12. SAME—AUTOMOBILE PARKING LOT—EVIDENCE.

Liability for damages to plaintiff's car should not be imposed
upon defendant, owner of premises leased to another, where
plaintiff's testimony showed he did not rely on any signs
on the premises to determine who operated the parking lot
and had done nothing to determine the identity or employ-
ment of the person to whom he was entrusting his car and
keys.

13. APPEAL AND ERROR—QUESTIONS REVIEWABLE—BAILMENT—ESTOP-
PEL—PLEADING.

Whether estoppel must, under present court rule, be specially
pleaded when it is an element of a cause of action, is not
determined, in case arising from an alleged bailment, where
it is found the bailment relation did not exist (GCR 1963,
112).

14. ESTOPPEL—EQUITABLE ESTOPPEL.

Equitable estoppel arises where a person by his conduct induces
another person relying on such conduct to believe in the
existence of a particular state of facts and to act thereon
to his prejudice.

15. BAILMENT—AUTOMOBILE PARKING LOT—OWNERSHIP—EVIDENCE.

Evidence adduced in action to recover damages to car which
was stolen while on parking lot which had been leased to
operator of the lot held, insufficient to show bailment of car
to owner of the premises, failure to record lease having no
effect as to plaintiff who had not relied on the recorded
title.

16. CONTRACTS—FRAUD—WRITTEN AGREEMENT—INSTRUMENT.

The rights and obligations of the parties under a written agree-
ment must be gathered from the instrument itself, where
the language of the agreement is plain, complete, and un-

*ambiguous, and there is no showing of fraud in the making or inducement.*

17. SAME—THIRD PARTIES.
    *A third party, not privy to an agreement valid between the parties thereto, may not properly attack such agreement.*

18. BAILMENT—CONDUCT.
    *Trial court in determining whether a bailment relationship existed between plaintiffs and defendant must look to the conduct of the party sought to be charged.*

19. SAME—EVIDENCE.
    *Evidence that a parking lot which was adjacent to and owned by defendant bowling alley and nightclub and from which there was an entrance or exit onto the lot held, insufficient to make defendant a bailee of plaintiff's automobile, where parking lot had theretofore been leased to operator.*

Appeal from Common Pleas Court of Detroit; Dingeman (Harry J., Jr.), J. Submitted Division 1 October 3, 1966, at Detroit. (Docket No. 612.) Decided October 27, 1967.

Complaint by Glenn P. Eckerle and Hanover Insurance Group, a New York corporation, subrogee of Glenn P. Eckerle, against Twenty Grand Corporation, a Michigan corporation, for damages to plaintiff's automobile which was stolen from parking lot adjacent to defendant's building. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Prosser, Cowell & Whitehouse,* for plaintiffs.

*Robert E. DeMascio,* for defendant.

J. H. GILLIS, J. On the evening of January 5, 1962, plaintiff, Glenn P. Eckerle, visited the Twenty Grand, a bowling alley and nightclub owned and operated by the defendant. This was plaintiff's third visit to the Twenty Grand and as he drove his automobile onto the parking lot located to the south

of, and adjacent to, the Twenty Grand he was met by an attendant. The attendant wore no uniform identifying his employer nor did the ticket plaintiff received give any indication of the owner or operator of the lot. Plaintiff turned his car over to the attendant, who proceeded to park the car, and retained the keys.

Plaintiff spent approximately one hour in the Twenty Grand and on his return to the lot discovered that his car had been stolen. At this point one of the attendants on duty went into the Twenty Grand stating: "I have got to find out what to do." The automobile was found approximately 1 week after the theft with the wheels and battery missing. Several other parts of the automobile were missing and certain property had been appropriated from the trunk.

Plaintiff testified that on previous occasions as he drove onto the lot he observed several attendants standing along the wall next to the entranceway of the Twenty Grand. This testimony was contradicted by witness Glenn, then an employee of the lessee of the parking lot, who stated the attendants stayed in the shanty. The president of defendant did not specifically contradict plaintiff on this point; he stated that the parking attendants "stand wherever they want to on the lot" and use the shanty for warmth in bad weather. The president also denied that the attendants were employees of defendant. Plaintiff further testified as follows:

"Q. Did you observe anything in the parking lot or its immediate vicinity to identify the parking lot?

"A. It is right next to the Twenty Grand. It is right at the premises. * * *

"Q. Did you see any signs there?

"A. Not to my knowledge; not to my recollection.

"*Q.* Did you see anything that had *any name other than Twenty Grand?*
"*A.* No, sir." (Emphasis supplied.)

Subsequent to this testimony, the defendant introduced evidence which showed that a sign did exist which indicated the lot was managed by someone other than defendant. This sign was located on top of the parking lot shanty and faced the side of the building, not the entrance to the lot. Further evidence indicated that this shanty was located to the rear of the lot approximately 30 feet from the entranceway to the building, and that the lights on the shanty faced the building and illuminated the name of Twenty Grand.

Plaintiff[1] instituted action to recover for the damage to his automobile and for the loss of his property. It was plaintiff's contention that the parking lot was operated by the defendant through its agents, servants, and employees and defendant was liable for allowing someone other than the plaintiff to remove the vehicle from the lot, citing CL 1948, § 256.541 (Stat Ann 1960 Rev § 9.1721). Defendant answered and raised an affirmative defense that the lot had been leased to a third person and defendant had no "control, care, custody or possession whatsoever of any lot on which plaintiff could have relinquished possession of his automobile."

The lease was executed on February 1, 1959,[2] covered a period of five years, named Willie Anderson as lessee, and recited a rental consideration of $50 per month. The evidence failed to disclose whether the lease was recorded although it was shown that Anderson did not file under an assumed

---

[1] Plaintiff, Hanover Insurance Group, appears in the matter by way of subrogation for the loss it paid under its policy of insurance to Glenn Eckerle.

[2] Perhaps it should be noted that this lease was executed and delivered on a Sunday although this issue was not raised either in the trial court or this Court.

name until May 21, 1962. There was no set charge for parking on the lot as the attendants worked solely for tips. Each attendant paid Anderson $4 to $5 per night from the tips they received, and on busy nights, weekends in particular, Anderson employed from 8 to 10 attendants.

Across the front of the building was an illuminated sign advertising the activities of the night club, located on the chimney were electric signs proclaiming "Twenty Grand Lanes," and on the side of the building facing the parking lot there was a sign stating "Twenty Grand Lanes." This latter sign was illuminated by flood lights located atop the parking lot shanty. Defendant also had employed uniformed guards to patrol the area, including the parking lot.

The trial court in finding a bailment existed stated that the lease was "a simple ruse designed to escape liability for losses such as this." Defendant appeals from the judgment awarding plaintiff $689.13.

The basic issue for this Court's determination is whether the trial court erred when it disregarded the lease and found that a bailment did exist.

At the outset, it is important to note that this case was tried without a jury.

" 'The trial court saw and heard the witnesses and, as trier of the facts, was best able to judge the credibility of, and the weight to be accorded, their testimony. We have repeatedly said that in cases tried without a jury the trial judge may give such weight to the testimony as in his opinion it is entitled to, and that in such cases we do not reverse unless the evidence clearly preponderates in the opposite direction.' " *Shaw* v. *Wiegartz* (1965), 1 Mich App 271, 277, 278, citing *Mallory* v. *Pitcairn* (1943), 307 Mich 40, 47.

The trial court appears to have based its decision on the disparity between the rent paid pursuant to

the lease and income derived from operation of the
lot. This Court is not restricted to reviewing the
reasons for the trial court's opinion. As stated by
*Williams* v. *Lakeland Convalescent Center, Inc.*
(1966), 4 Mich App 477, 483, "A trial court's cor-
rect disposition of a case will not be disturbed be-
cause a wrong reason is given for its decision."

Defendant attempts to escape liability on the basis
of the lease to Anderson. However, "a lessor  *  *  *
is not completely and automatically absolved of lia-
bility for injury sustained on the demised premises
merely through the execution of a lease." *Ward* v.
*United States* (DC Colo 1962), 208 F Supp 118, 122.
When the lessor holds himself out as the rightful
occupant and third parties are invited to use the
premises, "the lessor is estopped to deny that he had
such control of the premises as appeared by his rep-
resentation." 32 Am Jur, Landlord and Tenant,
§ 651, p 513.

In the instant case the only representation that
the lot was not operated by the defendant was the
sign above the shanty bearing the inscription,
"Andy's Parking Lot." The trial court as the finder
of fact viewed photographs of the sign and heard
testimony as to the manner in which the lot was
illuminated, and concluded that it was "a rather ob-
scure sign." This Court has consistently followed
the principle that in a nonjury trial, "Findings of
fact shall not be set aside unless clearly erroneous."
GCR 1963, 517.1. There is nothing in the record
that indicates the finding was clearly erroneous and
therefore we adopt this determination.

In contrast to the obscure signs representation,
there are the numerous signs on and about the build-
ing advertising the Twenty Grand. A careful read-
ing of plaintiff's testimony, as previously enumerat-
ed, does not affirmatively show a lack of reliance by
plaintiff. Plaintiff's answers must be read in con-

junction with the first question and in substance he states he saw no signs indicating the ownership of the lot—saw nothing but Twenty Grand signs. While it is true that plaintiff did not specifically state that he relied on the Twenty Grand signs, this can be inferred. The decisions of *Stuyvesant Corp.* v. *Stahl* (Fla, 1952), 62 So 2d 18; *Santise* v. *Martins, Inc.* (1940), 258 App Div 663 (17 NYS2d 741) ; *Grishman* v. *The Lincoln, Inc.* (1941), 28 NYS2d 488, contain no statement by plaintiff that he relied on defendant's representations. However, in the *Santise Case,* at p 742, the court stated:

"Any relationship between the parties which entitles the injured person to rely upon the representation is sufficient foundation for the estoppel. * * * Defendant's apparent ownership was tantamount to real ownership, and that plaintiff 'had a right to rely on the fact that defendant seemed to be in charge of the premises owned by him.' "

The trial court's finding that the lot was operated as an inducement to the general public to patronize the Twenty Grand is not clearly erroneous. This Court is of the opinion that Anderson was acting as agent for defendant either under actual or apparent authority and defendant is estopped from denying control of the premises. See *Stuyvesant Corp.* v. *Stahl, supra.*

Defendant further contends that even if a bailment is found to exist, "A bailee is relieved of responsibility for failure to redeliver [the automobile] by a showing that the property bailed was, through no fault of his, stolen. * * * The bailee must only show that the theft occurred without his fault. A theft does not create a fact or presumption of negligence."

These contentions do not necessarily relieve defendant of liability.

"If defendant was negligent the intervening act of the thief did not necessarily break the chain of causation." *Loving* v. *Howard Lare, Inc.* (1955), 344 Mich 97, 102.

Once a bailment is established and plaintiff has made out a prima facie case,

"It is then for the defendant to explain the loss and exonerate himself.   *   *   *   To this extent *   *   *   a burden rests upon the defendant; but, if this question of fact becomes a disputed one, the evidence of the plaintiff must preponderate." *Knights* v. *Piella* (1896), 111 Mich 9, 14.

In the instant case, defendant not only failed to return the car on demand, it failed to return the keys to the car which allegedly were placed in the parking lot shanty. Defendant has failed to explain the loss of car and keys and consequently has failed to exonerate itself from liability.

Judgment affirmed. Costs to appellee.

HOLBROOK, J., concurred with J. H. GILLIS, J.

LESINSKI, C. J. (*dissenting*). In support of his claim to establish the bailment of his automobile with defendant, plaintiff Eckerle showed that he pulled his car onto a paved lot adjacent to the establishment of the defendant, and that someone came up, took his keys and car and gave him a receipt which bore the name of no operator in exchange therefor.

During this presentation of plaintiff's case, no evidence was introduced to show any markings to indicate the ownership of the lot or operator of this lot. No evidence was introduced to show that any specific charge for parking was indicated, or that any charge for parking was made. No evidence was presented from the financial records of the defend-

ant. No evidence was presented to show any uniform on the attendants or other indication that would denote a relationship between the attendants and the defendant.

At the conclusion of the plaintiff's case, defendant moved for a directed verdict of no cause of action which was denied.

A reading of the record discloses that at the point at which plaintiff rested his case, he had failed to establish that the defendant had any real or apparent responsibility for the lot onto which plaintiff drove his automobile, or that any of the persons around the building or on the parking lot were employees or agents of the defendant.

On the record made in the presentation of the plaintiff's case, the trial court erred in not granting defendant's motion for directed verdict of no cause of action. While sufficient evidence had been presented at this point to establish a bailment, the plaintiff failed to establish the most important fact: that the bailment was with the defendant.

By his own testimony, plaintiff did not rely on any signs on the premises to determine who operated the lot. The record discloses that he did nothing to determine the identity or employment of the person to whom he was entrusting his automobile.

Plaintiff's complaint was brought in assumpsit. In the second count thereof, the allegation is made that the defendant "held itself out." This is the only usage of words indicative of any intention to rely on an estoppel theory.[1] However, it is apparent that if the claim of an express contract between the plaintiff and defendant fails, this must be

---

[1] In view of our determination here, it is not necessary for us to determine whether, under our present practice, prior case law requiring that where an estoppel is an element of a cause of action it must be specially pleaded (see *Pearson* v. *Hardin* [1893], 95 Mich 360) would be applicable where such is not one of those matters specified in GCR 1963, 112, "Pleading Special Matters."

the essence of plaintiff's legal theory. Plaintiff's second argument and citations therein in its appellate brief confirms this reasoning. Extensive research has failed to reveal any reported case involving a parking lot bailment with a similar factual background where the plaintiff has chosen the vehicle of estoppel as a basis for establishing the defendant's liability.

Among cases found involving estoppel, it is clear that the court looked to what the defendant did, failed to do, or suffered to be done that gave rise to liability. Generally these cases deal with operations within a principal operation such as in *Manning* v. *Leavitt Company* (1939), 90 NH 167 (5 A2d 667), where a hotel permitted a beauty shop housed on its premises to use the hotel name for advertising to the public. See *Santise* v. *Martins, Inc.* (1940), 258 App Div 663 (17 NYS2d 741); *Grishman* v. *The Lincoln, Inc.* (1941), 28 NYS2d 488; *Rubbo* v. *Hughes Provision Co.* (1941), 138 Ohio St 178 (34 NE2d 202); *Stuyvesant Corp.* v. *Stahl* (Fla, 1952), 62 So 2d 18; *Adelphia Hotel Co.* v. *Providence Stock Co.* (CA3, 1922), 277 F 905.

The doctrine of equitable estoppel arises "where a person, against whom it is pleaded, by his conduct induces another person relying on such conduct to believe in the existence of a particular state of facts and to act thereon to his prejudice." 31 CJS, Estoppel, § 59, p 374. Nothing in the plaintiff's case, as pleaded or presented below, showed the initial requisite in the above-cited definition. Defendant's conduct was not shown to have induced plaintiff's reliance.

Twenty Grand defended on the theory that it did not operate the parking lot either through agents, servants, or employees. Further, it answered that none of its agents, servants, or employees accepted plaintiff's automobile under a bailment for gain

and sufficient consideration given to the defendant; that the garage keeper's liability statute[2] through which plaintiff sought to fix its liability, did not apply to the transaction in question; and that defendant in fact was not liable under any common-law bailment theory.  Defendant further relied on the affirmative defense that said lot was leased to another person for purposes of operating a parking lot and that it did not have any control, care, custody, or possession of any lot on which Eckerle could have relinquished possession of his automobile.

Defendant, through its president, Martin Eisner, testified relative to the existence of a lease providing for the leasing of the lot, upon which plaintiff delivered his car to an attendant, to one Willie Anderson, for purposes of operating a parking lot, which lease purported to be in effect at the time of the Eckerle transaction.  The lease was allowed into evidence.[3]  Mr. Eisner denied that either the Twenty Grand or anyone acting on its behalf engaged employees that worked on the lot.  He denied that the Twenty Grand paid any of the parking lot employees.  He denied that Twenty Grand exercised any care or control whatsoever over the employees. He testified to the existence of a shanty upon the parking lot for the use of the parking attendants.  He testified as to the existence of a sign 3' x 7' on the lot which bore the name "Andy's Parking Lot," which was located above the shanty.  He testified that there was no sign on the lot in question which stated "entrance."  He testified the lot was leased to Willie Anderson at that time and that the purpose of the lot was so customers could park, and that other

_____

[2] CL 1948, § 256.541 (Stat Ann 1960 Rev § 9.1721).

[3] The lease on its face indicates it was entered into on a Sunday; however, this issue was not properly raised either at the trial level or on appeal.

than Twenty Grand customers could use the lot.
He testified that the area was not fenced, but was
lighted with floodlights located above the shanty.
He testified to the existence of an "attraction panel"
indicating the attraction playing at the Twenty
Grand on Warren avenue, with the word "entrance"
upon it. (This is not the entrance nor the lot that
was used by plaintiff.) Mr. Eisner denied having
any employees immediately inside or outside the
entrance to the Twenty Grand.

An exhibit numbered "Defendant's Exhibit 2" was
introduced which was a picture of the sign which
bore the legend, "Sorry we cannot be responsible
for loss or damage to cars. Please do not leave
valuables in cars. Glenn's Parking Lot Inc." Mr.
Eisner testified that it was a picture of the sign
that was upon the shanty on the parking lot at
the time of the Eckerle transaction and that the
only difference was that "Andy's" before "Parking
Lot" was painted out and the new name substituted
upon change of tenants.

After the testimony of Mr. Eisner, one John
Albert Glenn, called by the defendant, testified that
he was an employee on the lot on January 5, 1962,
employed and hired by Willie Anderson. Mr. Glenn
testified that he worked for tips; that he never
received moneys from the Twenty Grand; that he
is now the lessee of this parking lot; that neither the
Twenty Grand nor any of its personnel ever super-
vised or controlled the work on the lot; that if there
was any disturbance on the lot, as during January
of 1962, he would go to Willie Anderson; *that the
parking lot in question was 20' or 25' wide.* Mr.
Glenn's testimony indicated that the lot in question,
though used for parking, was previously a receiving
lot and that the cars were parked in other lots, on
the street and even on a school construction site; that
no charge was made for parking and that the at-

tendants relied solely on tips for their service; that for the right to work on said lot, *attendants paid Anderson* from $4 to $5 per night out of the tips they received; and that Mr. Anderson paid the Twenty Grand rent. The lease provided for a $50 a month rental.

When the defense rested its case, plaintiff Eckerle was recalled for rebuttal and testified that he could not say if the attendants had uniforms; that they were dressed in dark clothing and quite similar; and that he did not have his keys returned on the night in question.

Based on the evidence substantially presented above, the trial court found that a bailment relationship existed between Eckerle and the defendant; that it was a benefit to the defendant to have Eckerle patronize its establishment and as an inducement defendant offered handy parking facilities; and that the purported leasing of this valuable asset of defendant's business for $50 per month to one who is able to realize $5 per night per attendant is a simple ruse designed to escape liability for losses such as suffered by Eckerle.

The trial court entered judgment for the plaintiff in the amount of $689.13 with $7 costs and $25 attorney fee and denied defendant's motion to set aside the judgment entered.

On appeal defendant asserts that the trial court erred in nullifying the lease in question and in finding a bailment relationship between Eckerle and the defendant, and that notwithstanding the lease, the trial court erred in holding the loss of bailed property by theft created a presumption or fact of negligence chargeable to the bailee.

The uncontradicted record reveals the fact that a 3' x 7' sign was located above the shanty on the 20' to 25' wide lot which indicated the lot was oper-

ated as "Andy's Parking Lot." The conclusion of the trial court that this was an obscure sign is unwarranted as it is unsupported by any facts in the record that would allow for such an inference to be drawn.

On the vital question of whose employees, agents, or servants were operating the lot, *i.e.*, who entered into a bailment relationship with the plaintiff, no greater evidence was introduced during the defendant's case. Only on what was termed rebuttal evidence, which was timely objected to by the defendant and erroneously permitted by the trial court, was there evidence to the effect that plaintiff could not say the attendants were in uniform, but that all were dressed in dark, quite similar clothing. The issue of dress of the attendants was never raised during the plaintiff's or defendant's case. On the question of who actually took the bailment stands the uncontroverted testimony of one of the parking attendants that, on the night in question, he acted as one of the parking attendants under the direction of one Willie Anderson with whom he shared his tips on an agreed basis for being allowed to act on the lot and accept tips for the handling of cars.

The validity of the lease also stands uncontradicted. No evidence was presented to show that the parties to the lease did not act in accord with its terms or that the lease was fictitious. The plaintiff and the trial court, on the facts presented herein, are not allowed to delve into the reasons for the existence of the lease or into the economic benefits that might accrue to any of the parties thereto from its existence. No evidence was presented to show any fraudulent action by the parties to the lease to the detriment of the plaintiff. The fact that there is no evidence relative to the recording of the lease has no effect on the outcome of this matter as there is no showing that plaintiff relied on the recorded

title to the lot in entering into his relationship with the person to whom he entrusted his automobile.

It is well settled that as between the parties to a written agreement, where the language of the agreement is plain, complete and unambiguous, the rights and obligations of the parties under the agreement must be gathered from the instrument itself, absent a showing of fraud in the making or inducement. See 32 Am Jur, Landlord and Tenant, § 127, p 130; *Hoose* v. *Prescott Insurance Company of Boston* (1890), 84 Mich 309. We fail to see how a greater right to attack the validity of a written agreement such as the lease involved herein can be given a third party not privy to the agreement.

The trial court in its written opinion spoke of the lease as a simple ruse designed to escape liability for losses such as we have in this case. The trial court by its own statement, was moved by the fact that the operator of the lot apparently made a very substantial profit over the monthly rental for which the lease provided. The reasonableness of the financial arrangements between the lessor and lessee is not an issue in this lawsuit.

This writer can find no statute or case law that would preclude the arrangement between the lessor and the lessee in this cause. It is within the rights of the defendant, if he does not desire to engage in a parking operation, to remove himself from it. His motives, be they that he does not want the exposure to the liability that such an operation involves, or the personnel problems that such an operation entails, are not controlling. It is the defendant's action or what he suffers others to do in relation to the transaction in question that is controlling. The trial court in determining the relationship of plaintiff and defendant must look to the conduct of the party sought to be charged. In cases such as this, it is not enough to show what plaintiff believed, but what

defendant did or failed to do that he should have done to give rise to this belief. In this case no evidence was presented to show that defendant in any way through its agents, servants, or employees, misled plaintiff into believing he dealt with anyone other than the person to whom he entrusted his automobile or the operator whose sign was displayed on the lot. We find no evidence to show that the operator of the parking lot held out to plaintiff or the public, by way of the ticket used, or uniform of the attendants, or sign on the lot, that this was an operation of the Twenty Grand and that the defendant allowed him to so do.

Evidence that this lot was adjacent to defendant's premises, that there was an entrance or exit onto the lot from defendant's premises, or that the parking attendant took Eckerle's car, is not sufficient to sustain the conclusions drawn by the trial court herein to establish the necessary relationship of the defendant to make defendant a bailee of Eckerle's property. The actions of one of the defendant's employees, called from within the defendant's establishment after the bailment and apparent loss, in helping to search for the automobile after it was found missing, and the calling of the police, does not allow the inference that the interest of a bailee existed, for it can equally be inferred from these acts that the person was acting as a good samaritan coming to the assistance of one in difficulty.

The record does not support the finding made by the trial court that a bailor-bailee relationship existed between plaintiff and the defendant. The trial court's judgment was clearly erroneous.

The writer would reverse.